[ PHILADELPHIA, JANUARY 13TH, 1840. ]

## SCHALL and Others *against* MILLER.

#### IN ERROR.

1. In ejectment, brought against D. and others, who defended on the ground of a warrant in favour of S., one of the defendants, in which it appeared that D. was interested at the time, it was *held*, that evidence was admissible of declarations made by D. about the time of the issuing of the warrant, as to the manner and time of taking up the land; although a release by D. to certain others of the defendants had been given in evidence by the defendants, and evidence had been given on the part of the defendants to show that D. did not reside on the land at the time of the ejectment.

2. Notes of the testimony given by a witness on a former trial, taken by the judge who tried the cause, were held not to be admissible for the purpose of contradicting the witness; the judge having testified that it was not his practice to take full notes of the testimony, except in cases where it was probable that the cause would be reviewed; and it not appearing that full notes were taken by him on that trial.

THIS was a writ of error to the Court of Common Pleas of North-ampton County, to remove the record of an action of ejectment brought by Anthony F. Miller against John Schall, Samuel Brooke, John Drehr, impleaded with James Cresson, Joseph Cresson, John Hunt, Henry Fox, Anthony Fox, Benjamin Griffith, Samuel Rod-gers, David Davies and Samuel Fowler, to recover a tract of one hundred and ninety-five acres and seventy-six perches of land, in Norwegian township, Schuylkill county.

In pursuance of an act of assembly, this cause was removed from the Common Pleas of Schuylkill County, in which it originated, to the Court of Lehigh County, where it came on for trial on the 15th of February, 1837. A verdict and judgment were obtained by the plaintiff; but a writ of error having been taken, the judgment was reversed by this Court, and a *venire de novo* awarded.*

The cause came on again for trial on the 30th of January, 1839, before BANKS, President, when the plaintiff gave in evidence a war-rant to himself for the land in question dated the 25th of April, 1835. Parol evidence of an improvement on the land by one Levi Blew and Michael Blew having been given, the plaintiff then gave in evidence

* See 3 *Wharton's Rep.* 250, (*Schall* v. *Miller*.)

(Schall v. Miller.)

the record of a suit by John Hughes against Levi Blew, Michael Blew and John Adams, in the Common Pleas of Schuylkill County of December Term, 1817, with the fieri facias, inquisition and venditioni exponas thereon, and a deed from the sheriff of Schuylkill county, dated the 26th of October, 1818, to James Blew, duly entered in the prothonotary's office. He then put in evidence a deed to himself from James Blew and wife, dated the 27th of August, 1832, for twelve hundred acres, and certain surveys to show their boundaries.

Some other parol evidence having been given respecting the boundaries, &c., the plaintiff's case was closed.

The defendant then gave in evidence certain deeds and documents, as follows:

August 24th, 1824. Warrant to John Schall for one hundred and twenty acres of land in Norwegian township, Schuylkill county.

September 9th, 1824. Survey on the same of one hundred and ninety-five acres seventy-six perches, &c.

April 7th, 1825. Patent to John Schall for the same.

December 1st, 1828. Deed John Schall and wife to John H. Cresson, James Cresson and Joseph Cresson, for the same, for the consideration of sixteen hundred and fifty-six dollars.

January 10th, 1829. Release John Drehr and wife to the same for the same lands.

March 4th, 1829. Application of Niel Crosby for one hundred and eighty acres of land on an improvement, and the affidavit of Levi Blew, on which the application was founded.

March 7th, 1829. Warrant to Neil Crosby for one hundred and eighty acres.

May 14th, 1829. Survey to Niel Crosby, for fifty-two acres one hundred and twenty-nine perches, thereon.

March 26th, 1829. Deed Levi Blew and wife to Niel Crosby, for one hundred and eighty acres of land.

May 12th, 1829. Deed Niel Crosby to John Schall and Thomas S. Ridgway, for fifty-two acres one hundred and twenty-nine perches.

June 15th, 1829. Patent to John Schall and Thomas S. Ridgway, for fifty-two acres one hundred and twenty-nine perches.

January 25th, 1830. Deed John Schall and wife, and Thomas Ridgway and wife, to James Cresson, John H. Cresson and Joseph Cresson, for the same lands.

Parol evidence was then given on the part of the defendants, upon points not material to the questions on the writ of error.

The plaintiff then, after certain testimony in rebuttal, offered to

(Schall *v.* Miller.)

prove, by one Jacob Miller, certain declarations of John Drehr, respecting his taking up the land on the warrant to John Schall, given in evidence by the defendants. The defendant's counsel objected to the admission of these declarations, but the objection was overruled, and the evidence admitted ; to which the defendant's counsel excepted.

Jacob Miller then testified as follows :—" It was in the summer of 1824 or 1825, I came to John Drehr in Orwigsburg. He said he knew a piece of very good coal land. If I would advance him the money, he would take up the land in company. I told him I would if it was certainly vacant: I asked him where it was situated. He said it laid on the branch. He said if I would help to take up, I must come up with the horses, and they would go at night, so that nobody should see them. I asked how it came that nobody is to see us. I said, if nobody was to see us, I would not do it, to go up at night. I went home. A while after, in two or three weeks, I came up again and went unto John Drehr again and asked if the land lay so. He said no, now he and his neighbour Schall had taken it up ; that if I had not been an old woman, I could have had a share in it."

A great many witnesses were examined on both sides in relation to the merits, and also in respect to the character of witnesses. Among those examined were Thomas Baird and James Blew, in reference to whom the defendants offered in evidence, together with the deposition of Judge Blythe, his notes of the case of *Richly and Reed* against *Heizer*, tried at October Term, 1833, in Schuylkill county, to contradict them ; together with evidence to show that it was the same Thomas Baird and James Blew who then testified in that case, who had given testimony in this : to the admission of which notes the plaintiff's counsel objected, and the Court rejected them ; and the defendant's counsel excepted.

In his deposition Judge Blythe testified as follows :—" The notes here produced and now marked in page first, ' C. Blythe,' in my handwriting, are my notes of October Term, Common Pleas of Schuylkill County. Among the notes of causes then tried are my notes taken in the cause of James Cresson, John H. Cresson and Joseph Cresson against John Miller, Joseph Jefferson, and John Wolfington, No. 212, October Term, 1831. The jury was sworn October 23d, 1833, as appears by my notes. It appears by my notes, that James Blew was called in the first instance, by the defendants in the suit referred to and by them examined ; and according to my note of his testimony, he testified as follows :"

Then followed notes of the testimony of James Blew, Thomas Baird, and others, given in that case.

The deposition then proceeded :—" Thomas Sillyman and Jacob

(Schall *v.* Miller.)

Seitzinger, Esq. were then called and examined on the part of the plaintiffs, when the testimony appears to have been closed on both sides. I took the notes of the testimony as accurately as I conveniently could; I believe I took down substantially what the witness stated; I remember without reference to my notes, that James Blew was examined in that cause, but I cannot state what he testified without reference to my notes; there is no notice on my notes of the different days during which the trial was in progress; from any thing that I recollect, or that appears on my notes, I can't state whether the first and second examination of James Blew was on the same day; but from the amount of testimony contained in my notes, between his first and second examination, I think it probable, the two examinations were not on the same day. My general practice is to take full notes of causes, which there is a probability may be reviewed in the Supreme Court; this was a cause in which I took full notes." On his cross-examination, Judge Blythe said—" I can't testify to the substance of James Blew's testimony without my notes. I testify altogether from my notes, so far as it regards what James Blew stated on his several examinations. I remember independent of my notes that he was examined in the cause. I have been aided in taking down testimony by the counsel in the cause repeating what the witness stated. I can't say that I have experienced inconvenience from the distance at which the witness stands from my seat, in taking down the testimony. At the time of this examination the space between my seat and the back a rear wall of the court-house was considerable; it has been altered within the last year. When I detailed the names of the witnesses and the papers given in evidence, I spoke exclusively from my notes."

Among other witnesses the defendants produced the deputy-sheriff of Schuylkill county, who testified that he served the summons in this case; that Schall and Drehr did not reside on the land at the time, and never did reside there that he knew of; and that he served the writ on them in Orwigsburg.

The jury found a verdict for the plaintiff; and the defendants took this writ of error, and assigned for error the admission of the testimony of Jacob Miller, and the rejection of the notes of Judge Blythe.

Mr. *Hepburn* and Mr. *Mallery;* for the plaintiff in error, cited *Read* v. *Dickey,* (1 *Watts,* 152.) *Hoffman* v. *Lee,* (3 *Watts,* 352.) *Weedman* v. *Kohr,* (4 *Serg. & Rawle,* 174.) *M'Gill* v. *Kauffman,* (4 *Serg. & Rawle,* 307.) *Selin* v. *Snyder,* (11 *Serg. & Rawle,* 319.) *M'Kennan* v. *Doughman,* (1 *Penn. Rep.* 217.) *Cresson* v. *Miller,* (2 *Watts,* 273.) *Siegfried* v. *Levan,* (6 *Serg. & Rawle,* 312.)

Mr. *Greenough* (with whom was Mr. *Hoffman,*) cited *Johnson* v.

(Schall *v.* Miller.)

*Kerr,* (1 *Serg. & Rawle,* 25.)   *Swartz* v. *Moore,* (5 *Serg. & Rawle,* 257.)   *Bassler* v. *Niesly,* (2 *Serg. & Rawle,* 354.)   *Packer* v. *Gonsalus,* (1 *Serg. & Rawle,* 526.)   *Naglee* v. *Allbright,* (4 *Wharton,* 291.)

The opinion of the Court was delivered by

Rogers, J.—This is an ejectment for one hundred and ninety-five acres and ninety-six perches of land, in which the plaintiffs claim title under an improvement by Levi Blew, the right to which is regularly vested in him, by sundry conveyances.   The plaintiff gave in evidence the record of a judgment, John Hughes v. Levi Blew and others; a sale of the premises by the sheriff, and a deed by him to James Blew.   He also gave in evidence a deed from James Blew to Anthony F. Miller, the plaintiff.   The defendant commenced his title with a warrant to John Schall, one of the defendants, in which it would seem, John Drehr, another defendant on the record, was interested.   The defendant also relied on a disclaimer of title, by James Blew, who was the purchaser at the sheriff's sale.   The plaintiff offered in evidence the declaration of Drehr, as to the manner and time the land was taken up, on the Schall warrant: whereupon the plaintiff was permitted to prove, by Jacob Miller, " that in the summer of 1824 or 1825, he was in company with Drehr at Orwigsburg: that Drehr said he knew a piece of very good coal land : that if the witness would advance the money, they would take up the land in company.   Said he would, if it was certainly vacant.   Drehr said, if witness would help to take it up, he must come up with the horses; and they would go at night, so that nobody should see them.   Witness asked Drehr how it came, that nobody was to see them, and then said, if nobody was to see us, he would not do it : that he would not go up at night. After two or three weeks, witness came up again, and asked if the land lay so.   Drehr said, no ; now he and his neighbour, Schall, had taken it up : that if witness had not been an old woman, he could have had a share of it."   The defendants complain of the admission of this evidence.   The object of the testimony was to show a fraud in Drehr, and to deduce an inference from the clandestine proceeding on his part, that he was well acquainted with Blew's improvement.   And in this point of view, it was pertinent testimony against Drehr, who is a party to the record, and at or about the time the transaction alluded to took place, had an interest in the warrant.   At this time, he was the principal actor, and was then meditating the plan of surreptitiously obtaining the right to the land.   The testimony must be taken together, and must be viewed as one transaction.   When the witness saw him again, the land had been taken up on the Schall warrant, on the same conditions, and the jury were asked to infer, in the same manner as was pro-

(Schall v. Miller.)

posed by Drehr to Miller. The declarations of a person, immediately preceding an act, or at the time, may be given in evidence, to affect him, as part of the *res gestæ*. If Drehr had been the only defendant, it would hardly admit of argument, that his declarations were competent testimony. The admissions of a party to a suit, against his interest, are evidence in favour of the other side, when they bear on the matter in issue, whether made during the time he had the interest, or immediately preceding it, when he was about to acquire one. It is however said, that at the trial, Drehr had no interest; and that his declarations cannot be given in evidence to affect others. Whether the evidence admitted could affect the interests of the other defendants, it is not now material to inquire; as it is sufficient to sustain the judgment, that it was competent evidence against Drehr. The return of the sheriff, by the act of the 13th of April, 1807, is prima facie evidence that the person on whom the service is made, is in possession, whether he be or be not a party named in the writ. Now, although the defendants have given in evidence a release from Drehr, yet *non constat*, that by subsequent title, he may not have re-acquired an interest in·the premises; and it was not for the Court to anticipate that, in a subsequent part of the cause, the defendants would rebut the inference, arising from the sheriff's return. The defendant alleges that Drehr was made a party to the suit for the express purpose of making his declarations evidence, so as to prejudice the right of others. It sometimes happens, that a witness is made defendant, to exclude his testimony. And when no evidence has been produced against him, he is entitled to his discharge, as soon as the opposite party has closed his case; and may then give evidence for the others. And this is permitted to avoid injustice. But if there is any, even the slightest evidence against him, he cannot be discharged before the rest, and the case must go altogether to the jury. In analogy to this principle, if there had been no evidence against Drehr, a .verdict might have been taken in his favour. But, as there was conflicting evidence as to the possession of Drehr, although the evidence greatly preponderated in his favour, even if it has been the case of a witness, the defendants would have lost the benefit of his testimony. The defendants say they were greatly prejudiced by the testimony of Miller; but the only way to avoid it was, by praying a special direction to the jury, that it was evidence against Drehr only, and such of the defendants as had notice of the fact. Whether any of the defendants are bona fide purchasers without notice, it will be time enough to decide, when the question properly arises. It is sufficient to decide that the Court were not in error in receiving the evidence at the time, and under the special circumstances of the case. It was evidence, in this stage of the cause, against Drehr; and though there were other defendants, that fact cannot alter the principle. It was in the power

(Schall *v.* Miller.)

of the jury to find a verdict against him, and in favour of the other defendants.

But it is said that the Court erred in rejecting that part of the notes of Judge Blythe, mentioned in the third bill of exceptions. The objection goes to their authentication. " The notes here produced," &c., says Judge Blythe in his deposition, " in my handwriting, are my notes of October Term of Common Pleas of Schuylkill County : among the notes of causes then tried, are my notes taken in the cause of *Cresson et al.* v. *Miller, &c.*, No. 112, October Term, 1831." It is very evident, that the attention of Judge Blythe was directed solely to that cause, and the evidence given in it ; and that the only reason there was a general reference to the notes, arose from a practice of the judge of keeping the notes of all causes tried at a term stitched together in a book for his own convenience. He says in his deposition, that it was his general practice " to take full notes of causes which there was a probability might be reviewed in the Supreme Court. This was a cause (referring to *Cresson* v. *Miller*) in which I took full notes." On this statement, the notes in that cause were read without objection ; but it would be going an unwarrantable length, to rule that the testimony set down as given in other causes was evidence, on such proof of authentication. It is plainly inferable, from what is said, that it is his practice to take full notes, only in cases where there is a probability that the cause may be reviewed ; but whether the cause of which evidence was sought to be given, was of that description, the judge, in no part of his deposition, informs us. If evidence for this purpose, I do not see how we could exclude any facts which appear on the face of the notes, from the beginning to the end of the term, if pertinent to issues. This would introduce a laxity into the practice, which we are not disposed to countenance. It would be unsafe to extend the rule on this subject further than has been done, in cases already adjudged. The notes, I observe, on inspection, contain the arguments of counsel, the decision of the Court on points of testimony, and a journal of other matters which occur in the progress of the cause. It was not the intention, either of the parties, or the witness, to authenticate every fact noted, so as to make them evidence.

Judgment affirmed.