## Greenawalt *versus* Kohne *et al.*

| 85 | 369 |
|---|---|
| f212 | ¹100 |
| 85 | 369 |
| j 34 SC | 87 |
| 85 | 369 |
| f220 | ¹292 |
| f220 | ¹293 |
| 85 | 369 |
| f37SC | 605 |

1. Where at the execution of a writing a stipulation has been entered into, a condition annexed, or a promise made by word of mouth, upon the faith of which the writing has been executed, parol evidence is admissible, although it may vary and materially change the terms of the contract.

2. In debt upon a bond the defendant offered to prove that the bond was given for unpaid purchase-money of a certain lot; that to induce the purchase of said lot, plaintiff verbally agreed that if defendant did not like the property, plaintiff, on request of defendant, would take back the same, and pay defendant a premium and cost of his improvements; that there should be no personal liability by defendant for the purchase-money, and that plaintiff should look solely to the property for payment; that plaintiff was not to part with the bond or mortgage; that when defendant asked that the foregoing agreement should be inserted in the papers being executed, plaintiff said it was unnecessary, that his bond was sufficient, and that defendant had asked plaintiff to take back the property, as stipulated, which was refsued. The court below rejected these offers. *Held*, that they should have been received.

October 30th 1877.　Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1877, No. 88.

Debt by Frank Kohne and E. H. Myers, administrators of John R. Bingler, deceased, against Jacob Greenawalt, on a bond given by defendant to said Bingler for a balance of purchase-money.

This bond which was offered in evidence by the plaintiff was in the penal sum of $27,000, was made payable in instalments and secured by a mortgage on a lot in the city of Pittsburgh.

At the trial the defendant made severals offers of evidence, in substance as follows :—

" That the bond in suit was given by defendant to Bingler, the decedent, for the balance of purchase-money on a lot of land in the Twenty-third ward of Pittsburgh, secured by mortgage of same date ; that witness was present when the deed, bond and mortgage were executed and interchangeably delivered ; that it was then and there, immediately before the execution of said papers, claimed by defendant and admitted by said Bingler, that it was part and parcel of the agreement of the sale that said Bingler would, on request of the defendant, at any time within one year, take back the property and pay defendant a premium of $1000 and the cost of his improvements, or, if requested within two years, would pay $2000 premium and the cost of improvements ; that there should be, in any event, no personal liability by defendant for said purchase-money, said Bingler

4 NORRIS—24

[Greenawalt *v.* Kohne.]

having to look to the land alone for the collection thereof; that said Bingler was, under no circumstances, to part with the ownership of the bond and mortgage ; that when defendant claimed, as above stated, that the foregoing terms were part of the agreement of sale, and were assented to as such by said Bingler, defendant requested that they be inserted in the papers then proposed to be executed, but said Bingler said that it was not necessary, that his word was sufficient, that he would never go behind his agreement, and that defendant might depend upon said terms being carried out as fully and effectually as if they had been inserted in the papers; that, relying on such statements and promises, defendant executed and delivered the bond and mortgage and accepted the deed; that subsequently, within the first year, and again within the second year, defendant notified said Bingler of his wish to cancel the purchase and annul the sale, according to the above-stated agreement, but said Bingler evaded and finally declined to do so, alleging that it was out of his power, the bond and mortgage being no longer under his control, but still promised that he would get it back and fully perform his promise, as demanded by the defendant, which he never did or offered to do, though repeatedly requested and urged by defendant."

The plaintiffs objected to these offers on the ground that they were incompetent and irrelevant; that they contradicted and were at variance with the written contract; and that the parties having put their contract in writing in the deed, bond and mortgage mentioned in the offers, the same are conclusive of what the agreement was.

The court, White, J., sustained the objections and said :—

"Until our Supreme Court expressly decides that a bond and mortgage can be swept away by parol testimony of the kind offered, I am unwilling to take that position or to admit such testimony. If that is the law of Pennsylvania, it will be a very easy matter to get clear of paying purchase-money, and our bonds and mortgages for purchase-money will be the most uncertain securities that can be imagined. Even if the alleged contract had been in writing, I doubt whether the defendant could defend an action on the bond without proving a tender of re-conveyance, and putting the vendor in *statu quo.*"

The court then directed a verdict to be rendered for the plaintiffs.

A motion was subsequently made for a new trial, which was refused, White, J., filing the following opinion :—

"The offers of evidence rejected by the court may be reduced and condensed into two :

"1. That defendant was induced to purchase the property by the promise of Bingler to buy it back if defendant should become dissatisfied, and to pay for his improvements and a premium on his

[Greenawalt *v.* Kohne.]

purchase; that at the time the deed, mortgage and bond were executed, defendant called attention to that agreement, Bingler admitted it, and promised to carry it out; and relying upon his promise, defendant executed the bond and mortgage, without having Bingler's agreement reduced to writing; a year or so afterwards he called upon Bingler, in pursuance of the agreement to take back the property, &c., which he promised to do, but died without doing it.

"2. That there was to be no personal liability on the bond; Bingler was to look to the mortgaged premises only for payment; that when the bond was ready for signing, defendant objected to signing it, because that provision was not inserted, and was induced to sign it because of the representations of Bingler that it made no difference, and of his promise that he would not part with the bond, and would faithfully carry out his agreement to look to the land only for payment.

"The old common-law rule that parol evidence is inadmissible to contradict, add to, change or vary a written agreement, has been greatly relaxed in Pennsylvania. In a recent case it was said by the judge, delivering the opinion of the Supreme Court, that it does not exist in this state. Perhaps he did not mean that the rule has been wholly abrogated; but that it does not exist in this state to the same extent and stringency it does in England. Certainly we have no adjudicated case that goes so far as to say that there is no limit to the admission of parol evidence to contradict a deed or written instrument. As late as Martin *v.* Berens, 17 P. F. Smith 459, the rule is recognised and applied, and the exceptions to it clearly defined.

"It is difficult to reconcile and harmonize all our decisions on the subject. Great latitude has been allowed in the admission of parol evidence to prevent fraud or injustice. For this purpose parol evidence has been admitted of all the circumstances of the transaction, the subject-matter, the parties, the consideration—to prove a contemporaneous verbal agreement not directly contradictory to the written one—to supply omissions and deficiencies so as to carry out the true intent of the agreement, and generally to save a party from injustice, where a court of equity would give relief, from fraud, accident or mistake.

"Where a deed or other writing has been obtained by fraud, or where there was no fraud in obtaining it, but it is being used, or attempted to be used, for a purpose different from what it was intended, parol evidence is admissible: Thompson *v.* White, 1 Dall. 427, and the long list of cases following it, are based on this principle.

"The principle running through all the cases seems to be this: that the common-law rule, which was intended to guard against fraud and injustice by not permitting parties to deny their solemn written agreements, or overthrow them by the uncertain words and

[Greenawalt *v.* Kohne.]

memories of unreliable witnesses, should not be invoked as a shield to fraud, or be so applied as to work injustice.

" The rule, as it stood at common law, was, perhaps, too stringent. In the progress of judicial inquiry cases arose which required modifications of it. But the principle upon which it was based has received the sanction of the best judicial minds in England and America, and strikes even the common mind as eminently sound and proper.

" I know of no decision of our Supreme Court that goes the full length claimed by the defendant in this case. And I am unwilling to hold that a purchase-money bond and mortgage can be set aside and made utterly null and void by parol evidence, such as was offered in this case, until our Supreme Court shall expressly so decide.

" The defendant does not deny that he bought the property and voluntarily executed the bond and mortgage. He does not allege any mistake or omission in the deed or mortgage. There is no defect in the title. He took possession in pursuance of his purchase, and still retains possession. He never tendered to Bingler a re-conveyance of the property, and no such tender accompanied his offer of evidence. While thus in possession, he seeks to defeat a recovery on his bond on the ground of a parol agreement by the vendor to buy back the property. He does not charge any fraud in the sale to him. He does not allege any accident or mistake in the conveyance to him. But he says that the vendor promised to buy back the property if he should become dissatisfied with it, and, as he offered to give back the property, it is against conscience and fraudulent for the vendor, or his assignee, to insist upon collecting the bond. He claims the right to refuse payment on his bond, and to hold title and possession of the land as a means of compelling his vendor to comply with his parol contract to buy back the property, pay for his improvements, and pay a certain premium on his purchases.

" The defendant, therefore, stands on the footing of a vendor seeking to enforce a parol contract for the purchase of land. In the face of the statute against frauds and perjuries a direct action on the parol contract in this case could not be sustained. Why should it be more efficacious as a defence to an action on his bond ? The only fraud that can be charged against Bingler is his refusal to carry out his parol contract to buy back. But a mere refusal to consummate a parol contract for the purchase of land is not fraudulent in law. If that were considered sufficient evidence to sustain an action on a parol contract, the statute would be a nullity. And I cannot conceive why it should have greater force when set up as a defence to the payment of his bond.

" The defendant trusted in the verbal promise of Bingler. He knew, or must be presumed to have known, the provisions of the

[Greenawalt v. Kohne.]

statute against frauds and perjuries. He knew that a parol contract for the purchase of lands was worth nothing. He spoke about having it put in writing, but when Bingler said that was unnecessary, that he would keep his promise and faithfully live up to it, he did not insist upon having the agreement put in writing, but relied upon the word and trusted to the honor of Bingler. If he has suffered by Bingler's refusal to keep his promise, he has no person to blame but himself. He is in no worse condition than many others who have relied upon parol contracts for the purchase of real estate.

"That this promise of Bingler was a main inducement for the defendant to purchase does not alter the case. It was not a fraudulent concealment or representation of any fact. It does not touch the validity of the sale from Bingler to defendant. When the defendant got his deed and gave his bond and mortgage, and thus closed his contract of purchase, it was his duty, if he considered that previous promise of any importance, to have it reduced to writing and signed by Bingler. Failing to do so it amounts to nothing. If parol evidence of such promises, by a vendor, during the preliminary negotiations of a sale, are to be admitted to set aside a sale and defeat a recovery on the bond and mortgage of the vendee, sales of real estate would become very uncertain transactions, and purchase-money bonds and mortgages would become the most worthless of securities. We are, therefore, of opinion that the evidence, so far as it constituted a defence to the action, was properly ruled out.

"But on the other part of the offers, which related to the agreement that the defendant was not to be personally liable on the bond, and that Bingler was to rely solely upon the mortgaged premises for its payment, we have more doubt.

"Offer C. was to prove that the agreement between Bingler and defendant was that defendant was not to be liable personally for the purchase-money, that at the time defendant signed the bond he called attention to that agreement, when Bingler said it was not necessary to have it put in the bond, that he 'would stand to and keep his agreement as fully and effectually as if it was inserted,' that he would 'never claim any personal liability,' and that 'defendant would not have signed the bond or consummated the purchase but for such inducement and promise,' &c.

"This seems to come within the ruling of Irwin v. Shoemaker, 8 W. & S. 75, and some other cases. It is undoubtedly in derogation of the common-law rule. But it is our duty to follow the rulings of our Supreme Court, and we shall cheerfully do so wherever those rulings clearly cover the case before us. But in Irwin v. Shoemaker the opinion seems to be based on a mistake made by the scrivener in drawing the bond, thus bringing the case within the exception, that where there was a mistake a court of

[Greenawalt *v.* Kohne.]

equity will reform the instrument.    In this case there was no mistake.    Whether the declaration of Bingler, that there was no necessity for inserting the provision against personal liability and that he would keep his promise, was evidence of fraud sufficient to admit parol evidence to contradict the plain terms of the bond, may be doubted.    But even if that should be the case it was not sufficient to prevent a recovery on the bond, it would only limit an execution on the judgment to a levy on the mortgaged premises. And it is unnecessary to send the case back for another trial on that point at this time.    We must assume that the defendant could have established what he offered to prove.    The plaintiff objected to the evidence and it was not received.    If it had been received, its only effect would have been to restrain the execution.    We can do that until the question shall be passed upon by the Supreme Court.    In any event the case will go to that tribunal.    It is better, therefore, for the plaintiff to have the execution restrained to the mortgaged premises and have the case heard in the Supreme Court.    If that should decide that the evidence was properly rejected, the plaintiff will have leave to issue execution generally.    If decided otherwise, and the plaintiff should wish to have the question tried by a jury, it can be tried, perhaps, by a feigned issue, or if necessary a new venire will be ordered by the Supreme Court.

"Believing this to be the best course for both parties, a new trial is refused.    And it is ordered that any execution, issued on the judgment that may be entered on the verdict, shall be restrained until the further order of the court to the premises described in the mortgage which was given to secure the payment of the bond in suit."

The defendant took this writ, assigning for error the rejection of his offers of evidence, and the direction of the court that the verdict should be for the plaintiffs.

*Hill Burgwin,* for plaintiffs in error.—Parol testimony is admissible to show what passed at the time of the execution of the deeds: Thomson *v.* White, 1 Dall. 424 ; Overton *v.* Tracey, 14 S. & R. 326 ; Oliver *v.* Oliver, 4 Rawle 144.    Evidence is admissible to prove a parol agreement to release an obligor from personal liability on a bond : Irwin *v.* Shoemaker, 8 W. & S. 75 ; Hoeveler *v.* Mugele, 16 P. F. Smith 348.    A written instrument may not only be explained by parol but its terms may be varied or contradicted when it is shown that had it not been for the oral stipulation made at the time, the party affected would not have executed it: Caley *v.* Philadelphia and Chester Railroad Company, 30 P. F. Smith 370 ; Kostenbader *v.* Peters, Id. 438 ; Graver *v.* Scott, Id. 94 ; Lippincott *v.* Whitman, 2 Norris 244.

*M. W. Acheson,* for defendants in error.—A written contract

[Greenawalt v. Kohne.]

may only be varied by parol evidence where it contradicts nothing expressed in the writing: Chalfant v. Williams, 11 Casey 212; Martin v. Berens, 17 P. F. Smith 459. The evidence offered did not propose to show that anything was omitted from the written agreements. They assume that the parties were fully aware of their contents. The effort was to radically change and modify them. Parol evidence to vary a written instrument was held to be inadmissible in the following cases: Harbold v. Kuster, 8 Wright 392; Lloyd v. Farrel, 12 Id. 73; Collins v. Baumgardner, 2 P. F. Smith 461; Anspach v. Bast, Id. 356; Miller v. Fichthorn, 7 Casey 253; Hill v. Gaw, 4 Barr 493; Woods v. Wallace, 10 Harris 171; Lyon v. Miller, 12 Id. 392; Kennedy v. The Erie and Wattsburgh Plank-road Co., 1 Casey 224.

Mr. Justice SHARSWOOD delivered the opinion of the court, November 12th 1877.

We are of opinion that the offers of evidence by the defendant below ought to have been received.

It is agreed that the English rule excluding parol evidence to vary a written contract has not been adopted in this state in all its stringency. The exceptions, indeed, have in many instances almost eaten out the heart of the rule itself; but it is not altogether abolished, as may be seen in Martin v. Berens, 17 P. F. Smith 459, where, in an elaborate opinion, our late lamented brother, Mr. Justice WILLIAMS, exhaustively states the exceptions to the rule. But from Hurst's Lessee v. Kirkbride, decided in 1773—reported by Chief Justice TILGHMAN in Wallace v. Baker, 1 Binn. 610—down to the present time, this court has uniformly held, that where at the execution of a writing a stipulation has been entered into, a condition annexed, or a promise made by word of mouth, upon the faith of which the writing has been executed, that parol evidence is admissible, though it may vary and materially change the terms of the contract. Mr. Justice WILLIAMS recognises this in his opinion in Martin v. Berens, for he says, speaking of the case then before the court: "Here there is no allegation in either affidavit that the defendants were induced to execute the lease on the faith of the alleged parol agreement." It would be an affectation of learning to cite all the cases which establish this principle, but to those contained in the argument of the counsel of the plaintiff in error, may be added Miller v. Henderson, 10 S. & R. 290, which is *instar omnium*, but may be noticed as a case on all fours with the one now before the court. There parol evidence was held to be admissible under the plea of payment to a suit on a bond against a surety, to show that he executed the bond under a declaration by the obligee, that his signing was mere matter of form, and that he never should be called on for payment. Chief Justice TILGHMAN says: "The destruction of a written instrument

[*Greenawalt v. Kohne.*]

by parol evidence may seem dangerous, and, in fact, it is so. But the community would be in a still worse condition if it were established as an inflexible rule, that when a man's hand was once got to an instrument, no matter by what means, the door should be shut against all inquiry. The encouragement to fraudulent villainy would be so great under such a system that the consequences might be intolerable. The defendant does not deny that he executed these notes, or allege that he was ignorant of their contents ; but declares that he would not have executed them, but for the assurance of the plaintiff that the having two names was no more than matter of form, and that he should not be looked to as payer."

We cannot perceive any ground for the hypothesis of the learned judge below, founded upon the offers of evidence, that it should be regarded as a separate parol contract by the plaintiff below to repurchase, void by the Statute of Frauds, and only to be admissible upon showing fraud at the time. The law may be so. We cannot anticipate, of course, what the evidence may be on another trial. But certainly if the offers are supported by competent and sufficient evidence, it was all one and the same agreement containing concurrent and dependant covenants. It need not be said that a tender of a reconveyance was unnecessary, unless the improvements on the ground were paid for and the other terms of the contract offered to be complied with.

Judgment reversed and *venire facias de novo* awarded.