## Heller v. Heller's Executors.

*Contracts — Husband and wife — Written antenuptial agreement—Prior oral agreement — Independent collateral contracts—Judgment non obstante veredicto—New trial—Practice, C. P.*

1. Plaintiff in 1910, when about thirty-five years old, married the defendants' decedent, aged seventy-five, who died in 1919. A few days prior to the marriage they executed an antenuptial agreement under seal, the stated purpose of which was to make suitable provision for the plaintiff "in lieu of dower rights or thirds in said Frederic P. Heller's estate, in case she should, upon marriage to him, afterwards become his widow." The instrument declared that plaintiff released the husband, his heirs, etc., of and from all claims of dower, and that, "furthermore, the said plaintiff hereby accepts the provisions made for her benefit in lieu of her dower or thirds and all other claims which she may or might or could have in law out of the estate of the said Frederic P. Heller," etc. After the husband's death plaintiff sued his executors for $35,000, on the averment that some time prior to 1910, and at other times, the decedent proposed marriage to her, and by way of consideration for or inducement to her acceptance of his proposal, promised to give her shortly after marriage that sum, to be hers at once and absolutely. The trial resulted in a verdict for plaintiff for $37,100, and the defendants obtained rules for judgment *non obstante veredicto* and a new trial. Discharging the rule for judgment *non obstante veredicto*: *Held*, that the plaintiff's claim on the alleged oral contract dealt with a subject-matter different from that dealt with by the written antenuptial contract, contradicted nothing in the latter, and there was nothing in the one to be reformed by reference to the other; and making the rule for a new trial absolute: *Held*, that the omission of the court, in the face of specific points submitted by defendants to charge the jury that a parol antenuptial contract could only be established by evidence which was clear, convincing and satisfactory entitled defendants to a new trial.

2. Where a contemporaneous oral agreement is relied upon to qualify a written contract, it is enough to aver and prove that the former was the inducement for executing the latter; but where the written contract is a direct negation of the oral agreement, the latter cannot be established without proof that there has been fraud, accident or mistake in the execution of the former.

*Assumpsit.* Rules for new trial and judgment *n. o. v.* C. P. Berks Co., Jan. T., 1921, No. 47.

*Randolph Stauffer* and *H. P. Keiser*, for plaintiff.

*C. H. Ruhl*, for defendants and rules.

ENDLICH, P. J., Sept. 5, 1922.—The plaintiff, who before her marriage was Bertha J. Wilhelm, is the widow of defendants' decedent. They were married on March 14, 1910, the plaintiff then being about thirty or thirty-five years of age, and the husband about seventy-five. The latter died on Oct. 29, 1919. On March 5, 1910, they had entered into a written and sealed antenuptial

3 D. & C.

agreement, which was carefully prepared by counsel representing plaintiff and decedent, respectively, whose provisions are very detailed and minute, and which was acknowledged and recorded. The purpose of both parties is stated in a preamble to be the making of a suitable provision for the plaintiff "in lieu of dower rights or thirds in said Frederic P. Heller's estate, in case she should, upon marriage to him, afterwards become his widow." And the instrument towards its close declares that the plaintiff, "for herself, her heirs, executors, administrators and assigns, hereby remises, releases, quit-claims and fully and forever discharges the said Frederic P. Heller, his heirs, executors, administrators and assigns, and all his real estate now owned or hereafter to be acquired by him, of and from any and all claims of dower or thirds which she may, might or could have or be entitled to by reason of her marriage with the said Frederic P. Heller," and that, "furthermore, the said (plaintiff) hereby accepts the provisions made . . . for her benefit in lieu of her dower or thirds and all other claims which she may or might or could have in law out of the estate of said Frederic P. Heller, irrespective of the size and extent of the same." The plaintiff contends, however, that there was still another contract between her and defendants' decedent, preceding the written contract and reiterated when the latter was executed. She avers, and has based this action on the averment, that some time prior to Jan. 1, 1910, and at other times, the decedent proposed marriage to her, and by way of consideration for or inducement to her acceptance of his proposal promised to give her shortly after marriage the sum of $35,000, to be hers at once and absolutely. It is this alleged oral contract which the plaintiff seeks to enforce in this action. The trial resulted in a verdict for plaintiff for $37,100, and the defendants obtained these rules. A very careful review of the record has led to the conclusion that the rule for judgment *non obstante veredicto* cannot, but the rule for a new trial must, be made absolute.

1. The application for judgment *non obstante veredicto* upon the whole record under the Act of April 22, 1905, P. L. 286, is based upon the theory that plaintiff's claim is predicated upon the written antenuptial contract modified by an alleged contemporaneous oral agreement of defendants' decedent to pay plaintiff $35,000 shortly after marriage, and that the evidence to sustain this allegation does not measure up to the familiar chancery rule defining the kind and degree and *quantum* of evidence needful in such cases in order to satisfy not only the jury, but as well the independent judgment of the trial judge sitting as a chancellor. It may be noted, in this connection, that the plaintiff's statement avers a promise on Frederic P. Heller's part, both antedating and contemporaneous with the execution of the written antenuptial contract, without, however, averring that the oral promise was omitted from the written contract by fraud, accident or mistake, or that it formed the inducement for her joining in the written contract; and that the theory of a contemporaneous oral promise lacks any evidence sustaining it, the proofs of his promise indicating that it was made, if at all, before that time and as far back as November, 1909. Where a contemporaneous oral agreement is relied upon to qualify a written contract, it is enough to aver and prove that the former was the inducement for executing the latter: Greenawalt v. Kohne, 85 Pa. 369; Bown v. Morange, 108 Pa. 69, 75; Ferguson v. Rafferty, 128 Pa. 337; Coal and Iron Co. v. Willing, 180 Pa. 165, 167-8; Gandy v. Weckerly, 220 Pa. 285; Railroad Co. v. Bromer, 217 Pa. 263, 268-9; Croyle v. L. & I. Co., 233 Pa. 310, 316; Becker v. Building Ass'n, 239 Pa. 590, 593-4; Potter v. Grimm, 248 Pa. 440, 443-6; Noel v. Kessler, 252 Pa. 244, 249-50; Savings Fund and Loan Ass'n v. Fox, 253 Pa. 257, 259-60; Sales Co.

Heller v. Heller's Executors.

v. Farrell, 264 Pa. 149, 153; Kerr v. McClure, 266 Pa. 103, 105; Milk Products Co. v. Marcus, 272 Pa. 340, 344. But where the written contract is a direct negation of the oral agreement, the latter cannot be established without proof that there has been fraud, accident or mistake in the execution of the former: Crelier v. Mackey, 243 Pa. 363, 366; Bank v. Tustin, 246 Pa. 151, 153-4; Hamilton v. Fleck, 249 Pa. 607, 613; Neville v. Kretzschmar, 271 Pa. 222, 224-5. On the plaintiff's side, however, it is insisted that the oral promise of $35,000 was, at the suggestion of the decedent and with at least the tacit assent of the plaintiff, designedly excluded from the written and recorded contract in order to conceal it from the decedent's daughters, and was made collaterally to, outside of and in addition to the written antenuptial contract, and that, therefore, the rules stated have no application to it, and the proof of it was not subject to the chancery formula. Whether there was an oral promise such as the plaintiff avers constituted an issue which was bound to be submitted to the jury if there was evidence enough for that purpose. It is asserted on the part of the defendants that there was no evidence of the alleged oral promise except the testimony adduced by plaintiff that the decedent on various occasions, both before and after the execution of the written contract, admitted that he had made the promise, but, in connection with admissions made subsequently to the written contract, declared that he was not bound by the promise because not in writing. Interrogation of the terms of the written contract as we have it discloses that, with the exception of the provisions for joint occupancy of the dwelling and the support and maintenance of the joint household therein, and for rebuilding of the dwelling, etc., if destroyed by fire, the written contract relates practically exclusively to rights and obligations capable of arising upon the death of the decedent; and so, under the familiar rule of ejusdem generis, does the release with which the instrument closes. Neither deals with money claims of the plaintiff against her husband springing from his assumption of personal obligations or promises designed to be made good during the joint lives of the parties, or makes any provision for a money income or gift to her while the decedent lived.

It follows that if this claim is of that character, it deals with a subject-matter different from that dealt with by the written contract, contradicts nothing in the latter, and there is nothing in the one to be reformed by reference to the other; and in such event the case is one, not of an oral contract modifying or conflicting with a written one, but of two separate and independent collateral contracts standing side by side and equally enforceable, similarly to what was ruled on in Jack v. Dougherty, 3 W. 151, 155-9; Strawbridge v. Cartledge, 7 W. & S. 394, 399; Christ v. Diffenbach, 1 S. & R. 464; Hayden v. Mentzer, 10 S. & R. 329, 333; Frederick v. Campbell, 14 S. & R. 293; Overton v. Tracey, 14 S. & R. 311, 324-7; Bollinger v. Eckert, 16 S. & R. 422, 424; Railroad Co. v. Broomall, 18 W. N. C. 44; Weaver v. Wood, 9 Pa. 220; Stafford v. Stafford, 27 Pa. 144, 146-7; McMullin v. Glass, 27 Pa. 151; Miller v. Fichthorn, 31 Pa. 252, 259-61; Galway's Appeal, 34 Pa. 242, 244; Buckley's Appeal, 48 Pa. 491, 496; Lewis v. Brewster, 57 Pa. 410, 414; Watterson v. Railroad Co., 74 Pa. 208, 216; Holmes's Appeal, 79 Pa. 279, 289; Taylor v. Preston, 79 Pa. 436, 443; Audenreid's Appeal, 89 Pa. 114, 122-3; Parcell v. Grosser, 109 Pa. 617, 621; Heilman v. Weinman, 139 Pa. 143; Close v. Zell, 141 Pa. 390, 400-05; McGowan v. Bailey, 146 Pa. 572; Irvin v. Irvin, 142 Pa. 271, 169 Pa. 529; Taylor v. Sattler, 179 Pa. 451, 456-7; Henry v. Zurflieh, 203 Pa. 440, 450-51; McGary v. McDermott, 207 Pa. 620, 623; Colliery Co. v. John, 219 Pa. 380, 383; Miller v. Packing, etc., Co., 268 Pa.

3 D. & C.

51, 60-61; Tasin v. Bastress, 268 Pa. 85, 91. Under such circumstances, as some of these cases (e. g., Close v. Zell, 141 Pa. 390, and McGowan v. Bailey, 146 Pa. 572) show, the oral contract is not merged in the written one, nor abandoned. When it comes to the question whether there was evidence enough in this case to be submitted to the jury as proof of the alleged oral contract, it is contended on the part of the defendants that the alleged admissions of the decedent, which constitute practically the whole of the evidence of plaintiff on that point, are competent evidence only by way of corroboration of other substantive evidence, and such evidence failing in this case, there is nothing to corroborate, and the admissions, if made, go for nothing. The reliance for this proposition is upon Rearick's Exec'rs v. Rearick, 15 Pa. 66, and cases of which it is typical. Assuming, however, that that case can be understood as so ruling, it must be noted that it was a case of admissions offered to effect the modification of a written contract, and, therefore, subject to the chancery rule, and to be distinguished from the present case. Looking at both Rearick's Exec'rs v. Rearick, 15 Pa. 66, on the one hand, and Stafford v. Stafford, 27 Pa. 144; Watterson v. Railroad Co., 74 Pa. 208, and the other decisions, on the other hand, the sum of them all, read together, seems to be that this rule applies to equitable cases falling under the chancery requirement of proof beyond a reasonable doubt, to the satisfaction of the trial judge sitting as a chancellor, etc. As applicable to such cases generally, it appears indeed to be recognized in Brawdy v. Brawdy, 7 Pa. 157, 159; Shirley v. Shirley, 59 Pa. 267, 274-5; Railroad Co. v. Bromer, 217 Pa. 263, 268-9; Croyle v. L. & I. Co., 233 Pa. 310, 316, and other cases. Concerning cases not in that category, there are abundant authorities to the effct that admissions against interest are always allowable evidence—sometimes, as in Stafford v. Stafford, 27 Pa. 144, 147, spoken of as the least satisfactory kind of evidence—sometimes, as in Hoak v. Hoak, 5 W. 80, 83; McGill v. Ash, 7 Pa. 397, 398-9, as of a high degree of reliability—its weight and effect in any given case to be judged of by the jury: Conrad v. Farrow, 5 W. 536; Blackstock v. Long, 19 Pa. 340; Wolf v. Studebaker, 65 Pa. 459, 463—as substantive (Stafford v. Stafford, 27 Pa. 144) and direct (Greenawalt v. McEnelley, 85 Pa. 352, 356-7; Com. v. Perry, 10 Dist. R. 279, 281) evidence. In Gackenbach v. Brouse, 4 W. & S. 546, 547, such admissions by the husband were received as proof of an oral antenuptial agreement (and the objection of want of mutuality was briefly disposed of). The sacrifice involved in declarations against interest is regarded as equivalent to an oath: Bank v. Tyler, 3 W. & S. 373, 376. The confession of a party that he executed a paper is not secondary to proof of handwriting (Conrad v. Farrow, 5 W. 536), and it is competent to establish the execution of a note by proof of the admissions of the maker or by proof of handwriting: Donohoe's Estate, 271 Pa. 554, 558. If any more authorities be desired, they will readily be found in such decisions as Fetrow v. Kochenour, 3 Brewster, 138, 147; Allen v. McMasters, 3 W. 181, 187; Wiley v. Christ, 4 W. 196, 200-01; Schall v. Miller, 5 Whart. 156, 161; Snyder v. Wolfley, 8 S. & R. 328, 331; Galbraith v. Green, 13 S. & R. 85, 92; Frear v. Drinker, 8 Pa. 520, 521; Reed v. Reed, 12 Pa. 117, 121; Eldred v. Hazlett's Admin'r, 33 Pa. 307, 317; Williard v. Williard, 56 Pa. 119, 124; Taylor v. Gould, 57 Pa. 152, 156-7; Simons v. O. & M. Co., 61 Pa. 202, 222; Schwartz v. Hersker, 140 Pa. 550; Galt v. Smith, 145 Pa. 167, 170; Casciola v. Donatelli, 218 Pa. 624, 631-2; Munson v. Crookston, 219 Pa. 419, 421; Pittsburgh v. Railways Co., 234 Pa. 223, 232; Leitch v. Bank, 234 Pa. 557, 565-7; Hartzell v. Whitmore, 271 Pa. 575, 578. Nor must it be forgotten that, no matter how broad the language of the contract is, it is restricted to what the parties

clearly had in view and about which they were dealing together: Doster v. Zinc Co., 140 Pa. 147, 150-51; Smith's Estate, 210 Pa. 604 (applied specifically to releases in the formula, "the words used in a release are not to be extended beyond the consideration for which it was given:" see Rapp v. Rapp, 6 Pa. 45; Codding v. Wood, 112 Pa. 371; Flaccus v. Wood, 260 Pa. 161). As already pointed out, the written antenuptial contract relates to different parts of the subject-matter from those dealt with in the alleged oral contract, or, perhaps more accurately speaking, to a different subject-matter. Since as evidence of collateral facts written instruments are to be submitted to the jury (Reynolds v. Richards, 14 Pa. 205; Miller v. Fichthorn, 31 Pa. 252; Bank v. Hartman, 147 Pa. 558; McKean v. Wagenblast, 2 Grant, 462), the question whether the intrinsic evidence of the written antenuptial contract is to be received as tending and effective to establish that there was something outside of that contract which was dealt with by the parties on a separate basis (see Watterson v. Railroad Co., 74 Pa. 208, 216), is for the jury. And so is the question as to the existence and effect of the alleged oral contract. What was said and done and what was the meaning of what was said and done—all this is essentially for the jury: Maynes v. Atwater, 88 Pa. 496. Without going into more detail, it seems evident that this is not a case for the entry of judgment *non obstante veredicto* under the Act of 1905.

2. If, as contended for by the plaintiff, the $35,000 promise was made, it was in the nature of, and in a legitimate sense, a parol antenuptial contract. As such, though not under the decisions subject to the strict equity rule of evidence, it was subject to the rule laid down in Hunt's Appeal, 100 Pa. 590, 597, as regards the degree of proof required, that a contract or settlement of that sort can only be established by evidence which is "clear," "convincing" and "satisfactory." Whether it is so or not is to be "submitted to the cautious and distrustful consideration of the jury," and judged of by the jury, not by the court sitting as a court of chancery. But it would for that very reason seem that the rule just referred to should be brought to the notice of the jury in the charge and the conditions and effect of its application explained. Granted, therefore, that there was enough in the evidence adduced to sustain a verdict for plaintiff, it was not only permissible, but essential, to direct the jury's attention to certain matters which, whilst for them to weigh and pass upon, they ought to have been guarded against overlooking. It has been declared not advisable, where a case is to be retried, for the court to discuss the evidence in detail in advance of the retrial: McKnight v. Bell, 135 Pa. 358, 373. And, hence, it is allowable here to advert only briefly to a few items in point. The rule in Hunt's Appeal, 100 Pa. 590, has already been mentioned. Another matter proper to be spoken of in the charge was the circumstance that the plaintiff never until this action got under way informed her counsel (and she had several), or, indeed, any one else, of the promise alleged to have been made to her by the decedent. Nor is this the case of a mere omission to charge on some feature of a case where there has been no request to do so. It is the case of an omission to charge in the presence of specific points submitted, which, whether correct or not, served, at all events, to call attention to the matters referred to and suggest the necessity of dealing with them in the charge. In these circumstances, the omission cannot be confidently declared to have done the defendants no harm, but constitutes error entitling them to a new trial: see Railroad Co. v. Bock, 93 Pa. 427, 434.

The rule for judgment *n. o. v.* is discharged, and the rule for a new trial is made absolute.

From Wellington M. Bertolet, Reading, Pa.