JAS. McGOWAN ET AL. v. A. L. BAILEY ET AL..

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 3, 1891—Decided January 4, 1892.
[To be reported.]

1. A stipulation, contained in a contract for the sale of land, but omitted from the deed executed in pursuance of the contract, will not be extinguished by merger, when its place is not taken or supplied by the express or implied operation of the provisions and covenants which the deed does contain: Close v. Zell, 141 Pa. 390.

2. A stipulation, in a contract for the sale of coal, to convey along with it certain mining rights to be exercised on the surface of the land, was not merged in a deed afterwards made for the coal which omitted to convey such rights; and it was admissible in defence to an action against the vendee for trespassing upon the surface.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 60 October Term 1891, Sup. Ct.; court below, No. 66 October Term 1888, C. P. No. 2.

To the first Monday of August, 1888, James McGowan and William McGowan brought trespass against Austin L. Bailey and others, partners as Bailey, Wilson & Co., to recover damages for injuries alleged to have been done to the land of the plaintiffs in and by and in connection with mining operations carried on by the defendants. The particulars of the plaintiffs' claim are stated in the charge of the court below, infra. Issue.

At the trial on September 19, 1890, the following facts were shown:

On August 3, 1868, the plaintiffs, being the owners of a tract of land underlaid in part with coal, executed and delivered a deed to John O'Neil, the subject matter of the conveyance being therein stated to be "all the coal" in and under said tract, described by adjoiners. Then followed a description of the coal by courses and distances, the lines given being so run that the crop was outside the survey. The deed contained, as stated in the paper-books, the usual clause specifying in general lan-

guage, as included in the grant, all improvements, ways, water-courses, rights, privileges and appurtenances, belonging or appertaining to the principal subject matter, but made no mention of any specific mining rights. Before its delivery it was submitted to and approved by O'Neil.

In 1873, the coal so conveyed was levied upon as the property of O'Neil and sold by the sheriff to the defendants, the sheriff's deed to them referring to the deed from the plaintiffs to O'Neil for a particular description of the property sold. O'Neil had never worked this coal, and it was not developed by the defendants until 1883, when they opened a pit-mouth on the plaintiffs' farm, and built a trestle on the surface, extending from the pit-mouth to other property of the defendants. They then proceeded to mine the coal, and took out all the coal under the land. The pit-mouth and trestle were not used for any other purpose than the taking out of coal from the land of the plaintiffs. Whether they were necessary for that purpose, was disputed. In consequence of their mining operations, a spring upon the land was destroyed, and portions of the surface subsided for want of support, forming a large number of depressions.

The defendants, after showing that the deed to John O'Neil, dated August 3, 1868, was made in pursuance of a written agreement dated May 7, 1866, offered said agreement in evidence. By this agreement, the plaintiffs covenanted to convey to O'Neil in fee-simple, on or before July 2, 1866, " all the merchantable or stone coal which is contained in or may be dug from under all that certain tract [describing it by locality and adjoiners], with rights of way for any railroads, entries, etc., which the said John O'Neil, his heirs and assigns, may see proper to make at any time, for the purpose of working his pits; together with all suitable air-drifts, pit-mouths, water-courses, places for depositing slate and slack, and all other things necessary and proper for the suitable running of said coal, or any other coal that said O'Neil may want to run ; " in consideration whereof O'Neil covenanted to pay to the vendors " one hundred dollars per acre for said coal," in certain specified instalments. The purpose of the offer was stated to be, to show that the plaintiffs granted to John O'Neil the privileges upon the surface specified therein.

The offer was objected to for the reason that the agreement

was merely a preliminary paper, and the contract as actually·
consummated was as stated in the deed and gave no such
rights.

By the court: Offer refused; exception.[1]

Testimony for the defendants tended to show that the trestle
was built and used with the knowledge of the plaintiffs, and
without objection on their part.

The case being closed on the evidence, the court, EWING,
P. J., charged the jury in part as follows:

The plaintiffs claim, first, that the defendants have taken
out about one hundred and forty perches of coal which did not
belong to them on that farm. The defendants claimed in your
hearing that this deed did not constitute all of their contract;
that they had an agreement beforehand that gave them certain
rights not included in the deed. Plaintiffs' counsel objected
to that, and stated that the agreement was merged in the deed,
and we sustain the objection. We think the deed is what both
parties must stand by, and that which the court will stand by;
and we interpret this deed to mean that the McGowans con-
veyed all the coal under that farm. [The court read a descrip-
tion of the property from the deed.] That deed standing
alone, without explanation, conveys all the coal there may be
under that entire farm, merchantable or otherwise, so that the
plaintiffs cannot claim to be paid for that which they say they
sold, and which their deed conveys, and there is no allowance
to be made for the alleged going over the crop line. There is
no evidence that they took any coal belonging to these plaint-
iffs that is not on that farm, and the plaintiffs had conveyed
that.

Then again it is claimed that they have destroyed a spring
and they are liable for damages for that. According to the
testimony there was a spring at one end of the farm, about
seventy-three feet above the coal, and that spring has been
destroyed, has stopped running. Now, we think there is no
evidence that would justify us in submitting any question of
damage on that account. The plaintiffs sold the coal, all the
coal in their farm, and it was under this spring. The possi-
bility of the coal being mined from under the farm and then
leaving the spring intact, is so slight and uncertain, that we

Charge of Court below.

doubt whether any evidence could be adduced in any case that would justify the court in submitting to the jury a question of damages for the loss of a spring, but clearly there is no such evidence in this case. The loss of the spring would be one of the certain things to follow the mining of coal with any reasonable mining. . . . .

[Then the next item is for the opening of the pit-mouth and the building of a trestle on the farm. It seems that in 1883 a pit-mouth was opened, and about three hundred feet of a trestle work was run over the low land of the plaintiffs to connect with other property of O'Neil, to take out the coal. When the defendants conveyed this coal, if a right of way over the land was necessary to get the coal out, they conveyed it as a consequence of their conveyance of the coal. Mr. McGowan says that O'Neil could have got his own coal by another route; how, he did not undertake to say. There was no explanation of how it could be done that I recollect; nor can I see, either, how the court or jury could well find from the testimony whether or not there was a practicable way; but, if there was a reasonable way for him to get it without doing this, then the plaintiffs had a right to object to him putting it there, and have the right to recover reasonable damages or compensation; but if you find that, before this trestle was built or at the time, they were notified of it, that they consented to it by allowing them to do it, stood by and saw it built and used without any objection, then the jury is at liberty to and should infer that it was a necessary right of way which came from selling the coal; and if it was not, if you can find from the testimony that there was any damage, you will find it in favor of the plaintiffs on that branch of the case.] [3]

That leaves the main question in the case to be discussed and settled, and I think it would have been just as well perhaps to have left all these other things out and to have confined the question to the matter that is left. Plaintiffs sold the coal, and the defendants, the owners, had the right to take the coal out, and to take it all out, only providing that they were bound to support the surface from falling. They may do it by leaving the coal in, or they may do it with some artificial support; but the rule of law is this, that where the fee in land is separate, one party owning one part or stratum, and another

Arguments.

what is underneath, the lower stratum owes support to that portion which is above it; the owner cannot let it down, but must leave the necessary supports. It is not necessary for us to discuss the reasons or propriety of this rule. The Supreme Court have settled that, the first case arising in this county, and the rule is well settled. If they let down the surface by mining, by taking out the supports, they are liable for damages caused by the letting down of the surface, whatever those damages may be. The testimony is uncontradicted that portions of the surface have been let down; just how much, the witnesses differ upon. . . . . But, of course, you will take into consideration what these witnesses say, and render the verdict that you think the testimony warrants, in regard to the amount of damages that plaintiffs have sustained. It would seem that a portion of the damage came perhaps three years ago, and a portion of it is recent. [The damage that has been actually suffered, and the damage likely to be suffered from the removing of the supports, you will take into consideration, and come to your conclusion in this case without regard to the parties.] [4] . . . .

—The jury returned a verdict for the plaintiffs for $1,450. A rule for a new trial having been discharged and judgment entered, the defendants took this appeal, specifying that the court erred:

1. In refusing defendants' offer.[1]

2. "In allowing plaintiffs to give evidence of damages alleged to have been sustained by reason of the opening of a pit-mouth and erection of a trestle for coal railway."

· 3, 4. In charging as set forth in [ ] [3] [4]

*Mr. J. McF. Carpenter*, for the appellants:

The court should not have excluded the agreement offered in evidence. This is not a case falling within the ordinary rule as to merger. Aside from the parol testimony showing a recognition by the plaintiffs of the defendants' right to open the pit-mouth and construct the trestle, we submit that the agreement was admissible under the authority of Selden v. Williams, 9 W. 9; 2 Whart. on Cont., 684; Buell v. Willard, 9 Barb. 644; Long v. Hartwell, 5 Vroom 124. And the instructions as to damages were erroneous. To permit a jury to guess at the damage likely to result from removing pillars that

Arguments.

may never be removed, or from the falling in of surface that may never fall, is to allow a dangerous latitude to whim, fancy and prejudice. The total damage to the date of bringing suit is all that can in any event be recovered.

*Mr. W. B. Rodgers* (with him *Mr. Joseph Forsythe*), for the appellees :

1. The general rule is that contracts for the sale of land become merged in the deed executed and delivered in pursuance thereof : Jones v. Wood, 16 Pa. 38. The exceptions are : (*a*) where the stipulation is to do a series of acts at successive periods, or distinct and separate acts simultaneously, in which cases the executory contract becomes extinct only as to such parts of it as are covered by the conveyance : Long v. Hartwell, 5 Vroom 124 ; and (*b*) where there are covenants collateral to those providing for the execution of the deed, and not so connected therewith as to be at an end when the deed is executed : Buell v. Willard, 9 Barb. 644.

2. The agreement in question certainly does not come within the first exception ; every right granted was to be conveyed by the deed. Nor does it come within the second exception, so far as concerns the rights and privileges to be exercised in the taking out of the plaintiffs' coal, for these are not collateral to the grant of the coal. If the covenants, in so far as they relate to the running of "any other coal," were collateral, the answer to the defendants' position is (*a*) that no question as to other coal was raised in this case, and (*b*) the right to run other coal was not a right appurtenant to this coal, and therefore could not pass by the sheriff's deed to the defendants, not having been specifically conveyed.

3. The case, so far as regards the covenants, is very similar to Crotzer v. Russell, 9 S. & R. 78. And Selden v. Williams, 9 W. 9, is inapplicable, the covenant in that case having been collateral to the grant of the lot. At all events, however, the judge so charged the jury with regard to the pit-mouth and trestle, that the rejection of the agreement could do defendants no harm. He instructed them that the deed carried the right of way over the surface, if it was necessary to get the coal out, and that there was no evidence he recollected of, that it could be gotten out in any other way.

Opinion of the Court.

4. On the other hand, in view of the strong charge against us on the question of right of way, we could have recovered a larger verdict if the agreement had been admitted, as we would then have been allowed compensation for coal mined outside the courses and distances of the deed. And from the beginning to the end of this case there was no claim for damages by reason of the drawing of pillars in the future. The language of the charge respecting damage "likely to be suffered," had reference to testimony showing that more surface would fall by reason of the removal of pillars which had already been drawn.

OPINION, MR. JUSTICE GREEN :

In the case of Close v. Zell, 141 Pa. 390, we considered with care the subject of the merger of stipulations, whether in writing or verbal, in contracts for the sale of lands, followed by deeds in pursuance thereof from which the stipulations thereof were omitted. In that particular case we held that a parol stipulation by the vendor of land, to refund the purchase money in the event of a failure of title and to reimburse the vendee for any costs and expenses incurred, was not merged in a deed containing a covenant of special warranty, but no covenant of title, afterward accepted by the vendee in consideration thereof. It was the absence of the omitted stipulation from the deed, or from the implied operation of the covenants which the deed did contain, that entitled the omitted stipulation to consideration independent of the deed, as a source of legal obligation. The various phases of the subject, as illustrated by the cases cited in the opinion, were considered at some length. It is not necessary to repeat here the reasoning contained in the opinion. We think the present case comes clearly within the decision.

While the deed from the plaintiffs to O'Neil is not printed in either of the paper-books, and we therefore cannot contrast it with the original articles of agreement for the sale, it is stated by the court and counsel that the deed to O'Neil did not contain that provision of the articles, or any substitute for it, which is expressed in the articles in the following words, viz.:

"With rights of way for any railroads, entries, etc., which the said John O'Neil, his heirs and assigns, may see proper to make at any time, for the purpose of working his pits ; together

Opinion of the Court

with all suitable air-drifts, pit-mouths, water-courses, places for depositing slate and slack, and all other things necessary and proper for the suitable running of said coal, or any other coal that said O'Neil may want to run."

We assume that there are no covenants in the deed which take the place of or supply the omitted clause of the articles. We will not now undertake to determine the importance of this omitted clause of the original agreement to the defendants. As it contains, among other things, the grant of a right to run other coal than such as might be mined on the land, it is manifest that it does, or may, embrace consequences and rights which do not follow from a subsequent deed which merely conveys the coal on the land. We are clearly of opinion that the original agreement of May 7, 1866, between the McGowans and O'Neil was competent testimony, and should have been admitted in evidence. This sustains the first assignment of error.

The second assignment contains no specific offer of proof admitted contrary to defendants' objection, and we can find no exception which sustains it. It is therefore dismissed.

The matter covered by the third assignment seems to be a consequence of the rejection of the original articles of agreement, and in so far as that view of it is applicable, we sustain the assignment. It is difficult to see, however, in the specific language of the court, anything of which the defendant can complain. The court told the jury that, if the way were necessary to get out the coal, the right to it passed by the grant, and also, that if the plaintiffs stood by and saw the defendants building and using the trestle without objection, they might and ought to infer that it was a necessary right of way. All this was favorable to the defendants. But the court added, if it was not a necessary right of way and the jury could find there was any damage, they should find in favor of the plaintiffs. This, of course, ignored the effect of the articles, and if they were properly out of the case, the charge would be correct. We have held, however, that it was error to disregard the articles which expressly conferred the right in question.

As to the fourth assignment, we hardly think the learned court intended to say that damages resulting from the possible removal of supports in the future could be recovered. As we understand the language excepted to, it was meant to convey

the idea that damages already suffered, and damages likely to result from the removal of supports already taken down, might be recovered, and in that view we see no error in this part of the charge, and the assignment is not sustained.

Judgment reversed, and new venire awarded.