H. A. DOSTER v. FRIEDENSVILLE ZINC CO.

| 140 | 147 |
|-----|-----|
| 199 | 52 |
| 140 | 147 |
| 202 | 575 |

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF LEHIGH COUNTY.

Argued February 4, 1891—Decided February 16, 1891.

(*a*) A lease was granted "for the purpose of searching for mineral and fossil substances, and conducting mining and quarrying operations," ad libitum, the grantees to pay "for all fine zinc ores, sulphurets of zinc and iron ores" forty cents per ton washed and dressed and taken away.

(*b*) In the process of extracting the ore, the rock was crushed by machinery, the crushed material washed, and the ore thus separated was removed, used, and paid for by the grantees; while the refuse left, containing about 7.5 per cent of zinc ore, was treated as waste material, not utilizable as ores:

1. In such case, the refuse material must be regarded as a substance other than ores, and for its conversion by the grantees the grantor was entitled to recover the value thereof as damages, and to an injunction restraining the grantees from its further sale and removal from the lands demised.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 15 January Term 1891, Sup. Ct.; court below, No. 2 September Term 1888, C. P.

To the number and term of the court below, Herman A. Doster, executor of the last will of Jacob Correll, deceased, to the use of S. A. Detwiller, and A. J. G. Dubbs, trustee of Jennie Correll, now Bartleman, filed a bill in equity against the Friedensville Zinc Co. The bill set out the title of the beneficial plaintiffs to certain zinc ore lands in Upper Saucon township and certain leases thereof for mining purposes now vested in the defendant company; that the defendant company was engaged in mining ores on said tract under said leases, using the clean, separated zinc ores taken out in certain manufactures; that the ore, when first taken out, was separated from the earthy matter in which it was held by a system of crushing and jigging, the effect of which system was to precipitate and collect

large quantities of refuse material, called scrimpings ; that for a time the scrimpings were treated as waste material of no value, but in the year 1884 it was discovered that it had a commercial value for the purpose of being made, in combination with asphaltum and other substances, into paving blocks for paving streets, etc., and for top-dressing on ordinary roadways without being made into blocks; that after such discovery the defendant company without right, as was claimed, began to sell the scrimpings to persons desiring its use for said purposes, had sold large quantities thereof, and had received large sums of money therefor ; that the sale and removal of said scrimpings was, as was claimed, contrary to the letter and spirit of the said grants, and the money realized therefrom belonged to the beneficial plaintiffs ; praying for equitable relief by a decree :

1. That defendant be directed to file an account of the quantity of scrimpings sold by it, when, to whom, and at what price.

2. That defendant be required to pay to plaintiffs, the amount received for said scrimpings.

3. For an injunction restraining the further sale and removal of the scrimpings, and

4. For further relief.

Answer having been filed and issue joined, the cause was referred to *Mr. T. F. Diefenderfer*, as examiner and master, who filed a report showing the facts sufficiently appearing in the opinion of the court below, and, citing and considering Erwin's App., 20 W. N. 279 ; Foster v. Runk, 109 Pa. 291 ; Kier v. Peterson, 41 Pa. 357 ; Kitchen v. Smith, 101 Pa. 452 ; Henderson v. Lauck, 21 Pa. 362; Winlack v. Geist, 107 Pa. 297, recommended a decree that the defendant company pay to the plaintiffs the amount received for scrimpings sold by it, to wit, $1,315.19, with interest from certain dates when the sums aggregating said amount were received, and that an injunction be issued restraining the future sale and removal of the scrimpings, as prayed for.

Exceptions to the report, filed by the defendant and overruled by the master, having been argued, the court, ALBRIGHT, P. J., filed the following opinion :

Jacob Correll, now deceased, being the owner of a tract of land of about eleven acres in Upper Saucon township, Lehigh county, on November 1, 1858, entered into a written contract concerning the same with Samuel Wetherill. Thereby Correll conveyed to Wetherill and his assigns the right of entering upon said lands for the purpose of searching for mineral and fossil substances and conducting mining and quarrying operations to any extent he might deem advisable, and Wetherill, for himself and assigns, covenanted to pay at the rate of two dollars per ton, during the continuance of the lease, quarter yearly, and, in default of payment quarterly or within ten days after due, Correll, his heirs and assigns, were to have the right to enter as though said contract had not been made. There was a proviso, that if no minerals or fossils should be mined or quarried within two years from date, the contract was to be void; the contract or lease to continue ten years, and, if Wetherill or his assigns should continue in the occupancy of the land, after the termination of said ten years, then the contract to be in force for another term of ten years.

By indorsement on said lease, an agreement was made on August 29, 1860, between Correll, Wetherill, and R. H. Manning and Wm. C. Squier (it being recited that the last two were the assignees of Wetherill, each of a one third interest), that said lease should be so modified that the rent payable for all fine zinc ores, sulphurets of zinc and iron ores, should be forty cents per ton, washed, dressed and taken away, while the rent for rock ores should continue to be as stated in the lease. On December 7, 1860, the parties last named further agreed that the lessees might dress and separate the ores off the premises, not beyond the Lehigh river, opposite Bethlehem.

On May 12, 1864, said Correll and Manning and Squier, executed an agreement concerning the same lands, in which the grant was in same words as in the first mentioned agreement with Wetherill; that is, there was granted the right of searching for mineral and fossil substances, and of conducting mining and quarrying operations to any extent the grantees might deem advisable. It is mentioned that the premises are the same as contained in the agreement with Wetherill of November 1, 1858; that the term of the lease should be twenty years from the expiration of said lease to Wetherill; that the

Opinion of Court below.

price and conditions should be the same as were provided in the lease to Wetherill, with the modifications thereof above specified, with a proviso respecting the removal of and payment for carbonate or silicate ores (of zinc), and, in case any other than zinc ores were mined and removed, there was to be paid therefor at the rate of forty cents per ton, whenever said ores should be taken away, the lessees to have the right to dress or separate clean sulphuret ores from the rock, and to pay only for the clean or separated ore at the rate specified.

In 1881, the Friedensville Zinc Company, the defendant, succeeded by assignment to the rights of said lessees; that is, the company became vested with the rights of Manning and Squier, under the said contract of May 12, 1864.

The lessees and their assigns, under the contract of May 12, 1864, worked the mine on said premises. The only ore removed or extracted was zinc ore. In the process of extracting the ore the rock in which it was imbedded was crushed by machinery. The crushed material was washed, and the ore obtained separated and removed, used, and paid for, by the lessees. The refuse, being crushed rock from about the size of a child's playing marble down to dust, was piled on the leased premises. It contained 7.56 per cent of zinc ore. The residue was silica, alumina and lime, mostly lime.

In 1884, one Riegel, proposed to the company defendant to purchase some of said crushed stone, for the purpose of making roads and to manufacture artificial stone. The company sold to Riegel 2247 and a fraction tons, receiving fifty (and for one lot sixty) cents per ton, amounting to $1,315.19. To recover said sum and interest on it is one of the purposes of the bill. The further relief prayed for is an injunction against removing the crushed stone still on the leased lands. The learned master recommended a decree awarding to the plaintiffs said sum and interest, and the granting of the injunction prayed for. Of this decision the defendant complains.

The contract between the parties is to be construed so as to carry out the manifest intention of the parties: Foster v. Runk, 109 Pa. 291. The words of an agreement are ordinarily intended to be applied to the thing about which the parties are contracting: Edelman v. Yeakel, 27 Pa. 26; Codding v. Wood, 112 Pa. 371. Said GIBSON, C. J., in Case v. Cushman, 3 W.

Opinion of Court below.

& S. 544 : " It is one of Pothier's rules of interpretation, which have been deemed consonant to the rules of the common law, that however general the terms may be in which an agreement is conceived, it only comprehends those things in respect to which it appears that the contracting parties proposed to contract, and not others they never thought of."

In Erwin's App., 20 W. N. 278, it was held that the refuse resulting from the preparation by washing of iron ore, afterwards found to be valuable for the manufacture of paint, although it contained iron, did not pass by a grant of the exclusive right to mine and remove iron ore. It seems from the report of the case that the lessee was willing to pay for it as ore; he was enjoined from removing the refuse.

It is manifest that the parties to the lease intended to deal only concerning ores, chiefly zinc ore; incidentally they provided that other ores found and removed should be paid for at the same rate as zinc ore. It is true, the first part of the lease states that the lessees shall have the privilege of searching for mineral and fossil substances, and of conducting mining and quarrying operations to any extent they deem advisable. Further on in the contract, it is provided what price shall be paid for zinc ore, and that other ore shall be paid for at the same price.

Both in common and scientific parlance there is a difference between the terms " minerals " or " mineral and fossil substances " and " ores." The term, minerals, though frequently applied to substances containing metals, in its proper sense includes all fossil bodies or matters dug out of mines : Rosse v. Wainman, 14 M. & W. 859. In its enlarged sense it comprises all the substances which form or have formed the solid body of the earth : Bainbridge on Mines, 1. Fossils are organic substances which have become penetrated by earthy or metallic particles, petrified forms of plants and minerals; ore, a compound of metal and some other substance : Webster's Dict.

It cannot be said with any show of plausibility that the lessor thought he was granting, or the lessees that they were acquiring, the mineral and fossil substances not coming under the head of ores. There was no provision for payment for them. Suppose the lessees had found no ore, but coal or a

valuable deposit of limestone, cement stone, or clay, would they have had a right to remove such valuable substance, the lessor receiving not a cent? Plainly such was not the intention. If there is no grant of the substances other than ores, without ore being found there is none of said other substances found in conjunction with ores. Therefore, regarding the material in controversy as a substance other than ores, it must be held that it belonged to the lessor, and for its conversion the lessees must pay damages.

But it is contended that as it contained 7 per cent of zinc ore, it is to be regarded as ore, or as rock containing ore which the lessees have a right to extract. This can be disposed of by a few words. No method or appliance is known by which the small proportion of ore can be taken out profitably. Defendant, when it was dumped, did not propose, nor is it now proposed to pulverize the stuff and wash out the small amount of zinc it contains. That which has been removed cannot be reached to be worked over; it forms parts of roads and the like. The whole was thrown away and treated as waste. All concerned were satisfied with that method of mining. It belonged and still belongs to the landowners, the same as the limestone, rock and loam and clay. The parties, when they contracted, did not contemplate that the waste left on the premises should be the property of the lessees, nor that they should pay for it. This also answers the argument that if defendants must account for what was sold, it should at most be only at the rate at which they were to pay for clean ore, that is forty cents a ton.

The facts of this case are substantially identical with those in Erwin's Appeal. The rules of law applied there, entitle the plaintiff to the decree recommended by the master.

The court approves of the master's action in disposing of the question growing out of the allegation that a part of the material in controversy was brought to the plaintiffs' land from an adjacent tract in which they had no interest. At best it would be an admixture by the defendant to the whole of which the plaintiffs would be entitled.

July 28, 1890, the exceptions to the master's report are dismissed. Plaintiffs' solicitor may draw a decree and serve and submit the same as provided by the rules.

Syllabus.

—A decree, as recommended by the master, having been signed, the defendant took this appeal, specifying the dismissal of the exceptions, the confirmation of the master's report, and the final decree entered, for error.

*Mr. R. E. Wright* (with him *Mr. J. Marshall Wright*), for the appellant.

Counsel cited: Kemble Iron Co. v. Scott, 15 W. N. 220; Foster v. Runk, 109 Pa. 291; Morrison's Mining Dig., 236; Kartwell v. Common, 1 Stockt. Ch. 128; Rosse v. Wainman, 14 M. & W. 859; Rosse v. Wainman, 2 Exch. 800; Midland R. Co. v. Checkley, L. R. 4 Eq. 23; Johnson v. Kier, 3 Pittsb. 204; Kier v. Peterson, 41 Pa. 357; Kitchen v. Smith, 101 Pa. 452.

*Mr. W. E. Doster*, for the appellee.

Counsel cited: Lehigh Coal & N. Co. v. Harlan, 27 Pa. 439; Pratt v. Campbell, 24 Pa. 186; Edelman v. Yeakel, 27 Pa. 27; note to 1 Wm. Saund. 319; Case v. Cushman, 3 W. & S. 544; Allison's App., 77 Pa. 227; Williamson v. McClure, 37 Pa. 402; Berridge v. Glassey, 112 Pa. 455.

PER CURIAM:

This decree is affirmed upon the opinion of the learned judge of the court below, and the appeal dismissed at the costs of the appellant.

Decree affirmed.