# Benjamin Davis, Appellant, *v.* James Hamilton and the Borough of Downingtown.

*Grant—Restrictive application of the grant not favored.*

A construction of a grant which would restrict the grantee to the specific use for which the grant is first applied is not favored, and will not be adopted unless the language of the grant unmistakably indicates an intention to restrict the use.

*Waters and watercourse—Grant not restricted to primary uses.*

A grant gave the grantee and his heirs and assigns "the free use and privilege of a certain stream of water that now runs through other lands" of the grantor, "and the unobstructed right of conveying the said water in an open race or watercourse to the saw, plaster and feed mill as it is now running, with the right of entering upon said premises at any and all times to cleanse, scour and repair the said race and watercourse." *Held,* That the successors in title of the grantor have no right of action against the grantee or his successor in title for changing the use to which the water is put after he receives it, nor for trespass on grantor's land to maintain and repair the watercourse to supply water for such changed use.

Argued Nov. 19, 1897. Appeal, No. 132, Oct. T., 1897, by plaintiff, from judgment of C. P. Chester Co., Oct. T., 1896, No. 22, on verdict for defendants. Before RICE, P. J., WICK-

HAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ.
Affirmed.

Trespass.   Before WADDELL, P. J.

It appears from the record that this was an action of trespass,
and the complaint alleged not only trespass upon plaintiff's
land and digging it, but 'for virtually diverting a stream of '
water that passed through it.

The amount of damages as alleged does not appear in the
paper-books, but security was entered in the sum of $200.

Other essential facts appear in the opinion of the court.

Verdict and judgment for defendants.   Plaintiff appealed.

*Errors assigned* among others were (1, 2) In rejecting plain-
tiff's offers of evidence as to whether it was a special benefit to
the plaintiff's property to have the feed, saw and plaster mill in
operation near it; and whether it was a benefit to the neighbor-
hood to have a feed, saw and plaster mill in operation there.
(3) In the charge of the court as follows : " My impressions at
this time are that the grant contained in these papers does give
the Borough of Downingtown the right which they here claim."
(4) In the charge of the court as follows : " For the purposes
of this trial, we say to you that in our judgment the justifica-
tion here is complete, and the borough had a right to do just
what it has done, and that would seem naturally and necessarily
to result in a verdict in favor of the defendants."   (7) In sub-
stantially taking the case away from the jury and directing a
verdict for the defendants.

*William M. Hayes*, with him *J. Carroll Hayes*, for appellant.—
The Borough of Downingtown here attempts to sustain a most
flagrant misuse of the grant, and to evade its manifest intention.

They buy of the Ringwait heirs an insignificant lot of 1.06
acres, barely enough to carry with it this water right, whatever
it may be.   They now set up that they are the rightful suc-
cessors of Wilson Young in all the rights that he possessed, and
in many he did not possess, and never thought of possessing.

The right was reserved in the deeds to ".the owner of the
adjoining mill property," to convey the water " to the saw,
plaster and feed mill as it is now running."   And now this bor-

ough claims to be "the owner of the adjoining mill property," in the sense expressed in the grant, and to have the right to divert the water to this alien and uncontemplated use.

However general the terms may be in which an agreement is conceived, it only comprehends those things in respect to which it appears that the contracting parties proposed to contract, and not others they never thought of: Doster v. Zinc Co., 140 Pa. 147; Codding v. Wood, 112 Pa. 371, 378.

Having a construction put upon his contract plaintiff undoubtedly has the right to show all the surrounding facts and circumstances as they existed at the time the contract was entered into: Penna. R. R.'s Appeal, 125 Pa. 189; Erwin's Appeal, 20 W. N. C. 278; Sergeant v. Ingersoll, 7 Pa. 340; Stevenson v. Stewart, 7 Phila. 295.

Where an easement is granted for a specified use, the grant must be strictly construed, and the use cannot be extended or enlarged beyond that specifically granted: Lewis v. Carstairs, 6 Wh. 193; Crosland v. Borough, 126 Pa. 511.

*Alfred P. Reid*, with him *Butler & Windle*, for appellees.— A construction of a grant which would restrict the grantee to the specific use for which it is first applied is not favored, and will not be adopted, unless the language of the grant unmistakably indicate an intention to restrict the use: 4 Leading Cases in the Law of Real Property, 334; Johnston v. Hyde, 33 N. J. Eq. 632; Iszard v. Water Power Co., 31 N. J. Eq. 511.

The grant to Wilson Young, his heirs and assigns, is unlimited in character because no restriction or condition is suggested, and it is declared that it is the "free" use. "Free" means, not subject to restraint or control, individual, exclusive, independent, opposed to common: Anderson's Law Dictionary, 478.

"By them freely to be possessed and enjoyed," show a strong intent to give a fee, and have been adjudged sufficient to convey it: Burkhart v. Bucher, 2 Binney, 455.

By a devise of the "free use of lands" the lands themselves will pass: Cook v. Gerrard, 1 Saunders, 181.

Where an easement is of a certain quantity of water the owner is not bound to use it in any particular manner, though the purpose for which it is used is mentioned in the grant. He may use the water in a different manner or at a different place,

or increase the capacity of the machinery which is propelled by it, without affecting his right: Iron Co. v. Iron Co., 107 Mass. 290; Gould on Waters, sec. 320; Johnston v. Hyde, 33 N. J. Eq. 632; Groat v. Moak, 94 N. Y. 115; Frey v. Witman, 7 Pa. 440.

Under a grant of the privilege of sufficient water to propel certain specified machinery, the grantee is entitled to the use of the water for any purpose not requiring a greater power than is reserved: Iszard v. Water Power Company, 31 N. J. Eq. 511; Angell on Water-Courses (5th ed.), sec. 149; Luttrel's Case, 4 Coke, 86.

OPINION BY ORLADY, J., February, 19, 1898:

This action of trespass was brought to recover damages for the unlawful entry by the defendant—by its workmen—upon the land of the plaintiff, and " digging and removing the soil, grass and herbage " from the same. The defense was that the defendant had a legal right to enter, and dig, by virtue of a grant conferred by the plaintiff's predecessors in title.

In 1870, Thomas C. Hoopes, the then owner of certain real estate in Chester county, conveyed a part thereof, viz: one hundred and five acres and one hundred and twenty-four perches to the plaintiff in fee, with a reservation as follows: "and subject also to the right of the owner of the adjoining mill property, his heirs and assigns, of the free use and privilege of a certain stream of water which now runs through to the property hereinbefore conveyed, and the unobstructed right of conveying said water in an open race or watercourse to the saw, plaster and feed mill as it is now running, with the right of entering on said premises at any and all times to clean, scour or repair said race or watercourse." The same day the foregoing conveyance was executed, Thomas C. Hoopes conveyed to Wilson Young twenty acres and forty-one perches adjoining the land sold to Davis. After the general description of the acreage is added, " Further grant and convey unto the above named Wilson Young, his heirs and assigns, the free use and privilege of a certain stream of water that now runs runs through other lands of the said Thomas C. Hoopes, and the unobstructed right of conveying said water in an open race or watercourse to the saw, plaster and feed mill as it is now running, with the

right of entering upon said premises at any and all times to cleanse, scour and repair the said race or watercourse."

When Hoopes sold the two parcels of real estate to the plaintiff and Young, there was in operation on the part sold to Young, about one hundred feet from plaintiff's line a saw, feed and plaster mill, which was propelled by power secured from the water flowing in an artificial race or watercourse, of about twelve hundred feet in length, from a dam on the plaintiff's property to the mill.

About twelve years before this suit was brought, the mill was abandoned by its owner, and the dam, which diverted the water from a creek into the race, was no longer kept in repair, so that at the time of defendant's entry on plaintiff's land they were both in a useless condition.

After the abandonment of the mill and dam, the water, which would have flowed in the race under the conditions existing in 1870, ran in the bed of the parent stream, and the avowed purpose of the entry on the plaintiff's land was to reconstruct the discarded dam, and clean, scour and repair the open race so as to again bring the water into its bed, by which a stream of water would be again brought to the old mill site, where the defendant had erected a pumping station for forcing the water from the stream to the borough of Downingtown.

On the trial, the plaintiff offered evidence to show that it was a special benefit to the then owner of plaintiff's property, and a general benefit to the neighborhood to have a feed, saw and plaster mill in operation on the site as occupied at the time of creating the grants and reservations described, to which offer, objection was made and sustained by the court. However general the terms may be in which an agreement is conceived, it comprehends only those things in respect to which it appears that the contracting parties professed to contract, and not others they never thought of: Doster v. Zinc Co., 140 Pa. 147. The fact that a mill was in operation within a short distance from his property may have been an element in determining the price the plaintiff paid for his property in 1870, but there was no provision that the water in the race, as it then ran, should be limited to the use to which it was at that time applied, or that it should be so continued, and the purchaser must be presumed to have known that such a business enterprise depends for its

permanency upon many matters which no one but the mill owner has the right to decide. Whether the business would be profitable or desirable; whether the property would be rebuilt after being burned down; whether the mill would run or stand idle, would be decided by the mill owner, and would be contingencies over which this plaintiff had no right to compel nor control.

The condition of the property and the circumstances of the parties are to be considered, for the purpose of ascertaining what they really meant by the reservation. Angell on Watercourses (7th ed.), sec. 185, applies only when the intention of the parties is not clearly expressed in the language used.

The proof offered was, at most, the mere opinion of the witness, and we do not think it was competent in this action of trespass for digging and removing the soil, grass and herbage.

The primal benefit under the grant and reservation mentioned, was for the owner of the adjoining mill property, and the plaintiff was entitled to enjoy all riparian rights incident to his ownership of the land through which the race flowed. From all that appears in the evidence, all of the water which came to the defendant's property, by way of the race, passed through the open race in the same way it did when the mill was in operation.

The grant was of the free use and privilege of the stream of water conveyed in an open race, as it then ran to the mill, and the right to make the necessary repairs to the race. "As it is now running," referred to the volume of water conducted by the open race of the course, width and depth as then visible to the parties, and not to the perishable structure at which the water was then used. As a further aid to interpret the grant to Davis, we have in the same deed a reservation of a specific volume of water "in a half inch pipe in the head of the race to the barnyard," and all the water that remained was for the adjoining mill owner.

A construction of a grant which would restrict the grantee to the specific use for which it is first applied is not favored, and will not be adopted, unless the language of the grant unmistakably indicates an intention to restrict the use: 4 Leading Cases of Law on Real Property, 334; Cress v. Varney, 17 Pa. 496.

The deeds are to be construed in the light of the state of the property at the date of their execution: Connery v. Brooke, 73 Pa. 80; 3 Washburn on Real Property, 384.

Until the water left the upper owner's land the lower owner had no right to any of it, and after it passed the line of the upper owner, it not only belonged to the lower owner but the upper owner had no right either to the water, or to direct how it should be used. His right to it was exhausted, and he had no interest in it: Washburn on Easements (4th ed.), 55, 437; 28 Am. & Eng. Ency. of Law, 1030 and notes.

If the plaintiff has a right of action against the first lower owner for changing the use to which the water is put after he receives it, why should he not as well have a similar right against an owner further down the stream? If the present owner of the mill site had erected a saw, plaster and feed mill instead of a pumping station, it would not be contended that he would not have had a right to do all that the defendant has done in bringing the water to the property.

In Penna. R. Co.'s Appeal, 125 Pa. 189, the facts are very different from this case. The examiner and master there found that " during certain portions of every year, the greater portion of the stream is thus led away from the complainant's property, and he has been deprived of its use for agricultural property," and the question was, " does this grant and reservation give the railroad company the right and privilege of taking and conveying the stream in question away from both these tracts of land for the distance of about one mile, and then use the water for railroad purposes." The grant was subject to the limitation that it was to be for the use of the Parke tract, and it was " to be conducted where it formerly was." The Supreme Court says of it, " we do not see how so limited a grant can now be used to divert the water of the stream entirely away from both tracts a distance of a mile or more by means of iron pipes, and the water used, not at all for the purposes of the Parke tract, but for supplying the engines of a railroad company, or the inhabitants of a town." In the case being considered there was no diminution in volume of the water, no diversion of any part of it on the plaintiff's land, no deprivation of the owner of any benefit to his land, no change in the course of the stream

in its width or depth. As far as the open race in his land is concerned, all benefits and advantages that he had at the time of his purchase in 1870 he has now.

We think the case was properly tried, the assignments of error are overruled and the judgment is affirmed.