WOLFE ET AL., APPELLANTS, v. THE LICKING GRAVEL Co., APPELLEE.

(No. 1927—Decided January 14, 1943.)

*Messrs. Randolph & Johnson,* for appellants.
*Messrs. McDonald & McDonald,* for appellee.

MONTGOMERY, J. The appeal to this court was on questions of law and fact. The Common Pleas Court rendered an able and rather exhaustive opinion. We approve of and adopt that opinion, excepting its concluding eight lines. There the court, in discussing the defendant company's method of disposing of the overburden and topsoil, announces that "it is acting wholly within its rights," and dissolves the injunction. Whether or not the defendant was acting within its rights in permitting this topsoil and overburden to be removed from the land is the sole debatable question presented to us.

During the trial, the judge of the lower court evidently entertained the view contrary to the above-quoted statement and the resultant conclusion. In the transcript we note the following:

"The Court: To clarify the situation a little bit, allow me to say now that it is the view of the court at this time that the contract between these parties is

set out in this lease. If it was the desire or intention of the lessors to reserve any specific method of treating the overburden, they should have incorporated it in their lease. Now, it is proper for the gravel company to remove the overburden and to remove it, as has been suggested, in the manner most convenient to itself, except that it would not have the right, in the opinion of the court, to remove that overburden to another piece of property and haul it away and sell it and dispose of it, because that is not the purpose of the purchase under the lease. But, so far as the placing of it is concerned, if the lease has no specific provision in it, with reference to that, that is something else. It is claimed on the one side that it represents the entire contract between the parties, and on the other side it is claimed it does not represent the entire contract. They could put it anywhere that they see fit—that is, the gravel company, in taking it off, could place it anywhere on the property that it should see fit, but it should not take that off the property and dispose of it. I am just trying to clarify that.''

The lease in question conveys for a designated period of years a certain fifty-acre tract "for the purpose and with the exclusive right to excavate, remove and carry away sand and gravel." It is silent as to any rights in, or manner of disposition of, the topsoil and overburden. Incidentally, the reading of this lease brings to us something approximating pain, because of the use and repeated use in it of that inexcusable monstrosity "and/or."

Until the granting of the temporary injunction in the lower court, the defendant company had been causing the topsoil and overburden to be removed from the leased land by and for other persons, but without profit to it. Since the issuance of that injunction the defendant has dumped all such material in the pit,

from which the gravel and sand had been removed. In passing it may be observed that of this latter the plaintiffs cannot complain. The defendant is under no obligation to put this material on any particular part of the farm or be subject to the direction of the plaintiffs as to its being placed.

Defendant urges that the material in question has no value. This is not borne out by the evidence. One witness for plaintiffs was asked the question: "What would be the final result if that was put back in the hole, or spread out over the field?" He answered: "Well, it is in the ground, it would get mixed up with the gravel when it is plowed over, and I think it would be very valuable that way."

Mr. Frasch, secretary and treasurer of The Licking Gravel Company, directing the actual operation of this plant, was asked the question: "What value, in your opinion, has that overburden which has been so stripped and dumped and mixed up?" The answer was: "Not very much."

There can be no gainsaying the proposition that this material has some value to the landowners, possibly to the surface of the land after the sand and gravel operations shall have ceased; in any event, it has some value as a partial filler for the excavated portions of the tract; conceivably in its thickness of five or six feet containing other minerals of value.

Defendant also contends that the removal of this material from the land constitutes the cheapest and most expeditious way of handling it. That is beside the point. The lease might have made such provision, as on the other hand it might have provided for the manner of handling the material on the ground. It did neither. The lease is not ambiguous. It simply is silent as to this matter. If by its silence, the defendant is confronted by an item of expense not con-

templated by it, the answer is simply that, unfortunate as the fact may be, a court cannot afford relief.

This case is largely one of first impression, although it would seem that such a question might have arisen many times during the course of the years. We have tried diligently to find authorities upon the proposition in question. So far as we are advised or can learn, it has been considered in only three jurisdictions. However, the authorities governing construction of mining leases uniformly hold that the lessee acquires only such substantive interests in the lands as are specified in the lease itself. Otherwise, of course, the lessor would part with a greater interest than was contemplated.

Counsel for plaintiffs cite two Pennsylvania cases, to wit: *Erwin* v. *Hoch,* 7 Sad. (Pa.), 477, which we find also reported as *Appeal of Erwin,* 12 A., 149; and *Doster* v. *Friedensville Zinc Co.,* 140 Pa., 147, 21 A., 251. These two cases in a positive way do sustain the contention of plaintiffs.

In the *Erwin case,* the lessee was authorized to take iron ore from certain land, wash it on the premises, and do everything necessary to get out the ore. It was held that "the lessee had no right under the lease to take from the premises, for the purpose of manufacturing paint, the refuse matter from the washing process."

In the *Doster case,* the lessee was granted the right to search for mineral and fossil substances, to conduct mining and quarrying operations, to pay for zinc or other ores removed. The lessee was disposing of refuse cracked rock for road repairs. An injunction was granted against the removal of this material from the land.

We do find these two cases approved and followed in *Wright* v. *Wright Mining & Royalty Co.,* 137 Kan.,

619, 624, 21 P. (2d), 350. There the lease provided that "All chats and tailings to be property of parties of the first part"—the lessors. By these terms were designated the mine refuse, which lessee was attempting to remove, and the court held that even without this provision in the lease, it would have been so construed.

And we direct attention to the case of *Percy LaSalle Mining & Power Co.* v. *Newman Mining, Milling & Leasing Co.*, 300 F., 141, which sustains the contention in negative fashion. The second paragraph of the syllabus of that case is:

"In a mining lease granted in consideration of royalties, there is an implied negative covenant that the property shall be used only for the purposes for which it is demised, which may be enforced by injunction restraining the lessee from using the tunnels and shaft as a way for removal of ore mined from adjoining property."

The relief sought in the instant case is an injunction against the removal from the leased premises of this top soil and overburden, which does have value to the landowners, and which was not conveyed by them to the lessee, and to which accordingly the lessee can have no claim.

The relief sought will be granted and the injunction made perpetual. The defendant will be accorded the same injunction awarded in the Court of Common Pleas. Motion for new trial, if filed, will be overruled.

*Decree accordingly.*

LEMERT, P. J., and SHERICK, J., concur.