ONE GREENSTREET, INC., D.B.A. CANADIAN PACIFIC EQUILEASE ET AL., APPELLANTS, *v.* FIRST NATIONAL BANK OF DAYTON ET AL., APPELLEES.

(No. 8192—Decided February 22, 1984.)

*William D. Meily,* for appellants.

*Ray A. Cox,* for appellee First National Bank.

*Richard G. Snell,* for appellee Truck Center of Dayton.

ZIEGEL, J. This lawsuit revolves around a 1966 White Freightliner tractor/truck. In October 1976, appellee Truck Center of Dayton, Inc. (hereinafter "Truck Center"), then known as Dayton White Trucks, Inc., sued appellant, One Greenstreet, Inc. (hereinafter "Greenstreet"), and others to recover damages for repairs performed on the White truck, this action being common pleas court case No. 76-2101. There was also pending another suit brought by Greenstreet against parties not involved in the present action, being case No. 77-223, and these two cases were consolidated. Before trial, case No. 77-223 was settled, whereby title to the White truck was granted to Greenstreet, subject to a lien of the Third National Bank. Pursuant to the court order issued in case No. 77-223, with the unauthorized assistance of the Miami County Sheriff, Greenstreet on October 27, 1978 took possession of the truck, which had been in the possession of Truck Center since it had been brought in for repairs in 1976. Although the court order in case No. 77-223 conferred title upon Greenstreet, it was silent as to the right of possession.

When the judgment was rendered in case No. 76-2101, it was determined that Truck Center was entitled to the possession of the White truck until its repair bill in the determined amount of $3,548.18 plus interest was paid, and thereupon Truck Center obtained possession of the truck.

Thereafter, on July 26, 1979, appellee First National Bank became involved with the White truck when Greenstreet gave First National a security interest in the White truck for a loan of $12,000. First National was not apprised of the fact that Greenstreet was not in possession of the White truck, or that Truck Center was entitled to its possession. First National learned this on August 20, 1979, when Truck Center sent a notice to lienholders that it proposed to obtain title to the White truck pursuant to R.C. 4505.101 if the repair bill and storage bill were not paid

Upon learning about Truck Center's intentions, Greenstreet urged First National to repossess the truck, sell it, and apply the proceeds to its loan. First National reneged, however, on the ground that on the basis of the truck's book value, the amount it could obtain from a sale would be less than Truck Center's prior artisan's lien. Instead, First National advised Greenstreet to replace its worthless security interest in the White truck.

On April 9, 1980, Greenstreet and its president, William Kuntz III, individually, brought this action against First National, Ralph Archer (president of Truck Center), and Truck Center demanding that the issuance of the title to the White truck to Truck Center be set aside; for damages for conversion of its ownership interest; and for damages from First National for its failure properly to exercise its security interest in the White truck to obtain funds thereon to Greenstreet's credit. Archer counterclaimed and sought damages for Greenstreet's unauthorized removal of the White truck from his Miami County farm. Truck Center counterclaimed for a judgment for storage costs on the truck and for punitive damages for Greenstreet's unlawful interference with its possessory artisan's lien.

The matter was referred, and after an extensive evidentiary hearing, the referee made the following recommendations, pertinent to this appeal:

"1. That judgment be entered in favor of First National Bank of Dayton dismissing the complaint with prejudice;

"2. That judgment be entered in favor of One Greenstreet, Inc., and against Ralph Archer and Truck Center of Dayton, Inc., on the complaint in the amount of $100 with interest * * *;

"3. That judgment be entered in favor of Ralph Archer and Truck Center of Dayton, Inc., dismissing the complaint of William Kuntz, III, with prejudice;

"4. That judgment be entered in favor of One Greenstreet, Inc., and William Kuntz, III, dismissing the counterclaim of Ralph Archer with prejudice;

"5. That judgment be entered in favor of Truck Center of Dayton, Inc., and against One Greenstreet, Inc., and William Kuntz, III, on its counterclaim in the amount of $100 with interest * * *."

Plaintiff duly filed its objections to this report, which were overruled, with the trial court confirming the recommendations of the referee and entering judgment thereon. Appellant Greenstreet thereupon perfected this appeal, and assigns error as follows:

"1. The Common Pleas Court of Montgomery County, Ohio erred in adopting the referee's report where said report was contrary to Ohio statutory and common law and against the manifest weight of the evidence.

"2. The trial court referee erred to the prejudice of the appellant by participating in the present proceeding because of his participation as an attorney in a prior proceeding involving the appellant and the appellee First National Bank, disqualified him from hearing the case with impartiality."

Of initial significance is the value of the White truck which the referee determined to be $3,500. In its brief, Greenstreet questions this valuation. Although the testimony taken included opinions that the truck was worth more than $3,500, there was also substantial testimony to that effect. Accordingly, we conclude that the valuation used by the referee was supported by the evidence and is not against the manifest weight of the evidence.

The main thrust of Greenstreet's assignment of error revolves around an

interpretation of R.C. 4505.101, which provides in pertinent part:

"(A) The owner of any repair garage or place of storage in which a motor vehicle with a value of less than three hundred dollars has been left for fifteen days may send by certified mail with return receipt requested to the last known address of the owner a notice to remove said vehicle. If the motor vehicle remains unclaimed by the owner for fifteen days after the mailing of such notice, the person on whose property the vehicle has been abandoned may obtain a certificate of title to such motor vehicle in his name in the manner provided in this section.

"The owner of such repair garage or place of storage shall execute an affidavit that all of the requirements of this section necessary to authorize the issuance of a certificate of title for such motor vehicle have been met. Such affidavit shall set forth the value of such motor vehicle when unclaimed, which value shall be determined in accordance with standards fixed by the registrar of motor vehicles; the length of time which such motor vehicle has remained unclaimed; the expenses incurred with such motor vehicle; that a notice to remove said vehicle has been mailed to the titled owner, if known, by certified mail, return receipt requested; and that a search of the records of the bureau of motor vehicles has been made for outstanding liens on such motor vehicle.

"No such affidavit shall be executed or filed until after a search of the records of the bureau of motor vehicles has been made. If the research reveals any outstanding lien on such motor vehicle, the owner of such repair garage or place of storage of such motor vehicle shall notify the mortgagee or lien-holder by certified mail, return receipt requested, stating where the motor vehicle is located and the value of the vehicle. Unless such mortgagee or lien-holder shall claim such motor vehicle within fifteen days from the mailing of such notice, his mortgage or lien shall be invalid."

Greenstreet contends that "value" does not mean "net value," that is, value less the amount of the artisan's lien, as urged by Truck Center. In this respect, Greenstreet has no quarrel with the referee who reached the same conclusion, that Truck Center had unlawfully obtained title to the White truck. Under these circumstances, Greenstreet contends that Truck Center's certificate of title should have been invalidated. In the meantime, however, as established by the evidence, Truck Center had sold the truck to an individual who was not a party to this action, and the ownership and whereabouts of the White truck at the time of the trial was not established by the evidence. While in its demand for relief Greenstreet sought the return of the truck, it did not follow through on any action of replevin. Accordingly, the referee concluded, and the trial court confirmed, that Greenstreet did have a valid action for conversion against Truck Center.

For this conversion, Greenstreet sought damages based upon its loss of rental value of the truck and upon an enhanced value of the truck itself. As to loss of rental value, it is noted that Greenstreet could not have rented the truck unless it was entitled to possession thereof, and under the terms of the judgment in case No. 76-2101, possession was conferred upon Truck Center until its artisan's lien was paid. There is no indication that any proffer was made as to the payment of this lien. Not being entitled to possession of the truck, Greenstreet could not have rented it, and thus it had no loss of use upon which to base a measure of damages.

The referee found that because the amount of the artisan's lien plus accrued interest exceeded the $3,500 valuation which had been placed on the truck, Greenstreet owned no equity in the truck for which it was entitled to compensation. Accordingly, the referee

awarded, and the trial court confirmed, an award of nominal damages to Greenstreet in the amount of $100. We concur with that conclusion.

The thrust of Greenstreet's argument as to its asserted error that the trial court erred in dismissing the complaint against First National is based upon its interpretation of R.C. 1309.18. R.C. 1309.18 provides in pertinent part that "[a] secured party must use reasonable care in the custody and preservation of collateral in his possession." Although First National did not have actual possession of the White truck, since under the judgment issued in case No. 76-2101 possession was in Truck Center until its artisan's lien was paid, Greenstreet contends that First National had "constructive possession," citing Black's Law Dictionary which defines constructive possession as the "power to control and intent to control such item * * * [and] [b]eing in a position to exercise dominion or control over a thing." Certainly, under the third paragraph of R.C. 4505.101, quoted *supra*, First National had the authority to claim the truck when it was notified that Truck Center intended to obtain title to it. Indeed, Greenstreet requested that First National take possession of the truck, sell it, and apply the proceeds of the sale to First National's loan to Greenstreet. Greenstreet therefore contends that First National's refusal to take possession of the truck at that time constituted a breach of its obligation under R.C. 1309.18.

In our opinion, R.C. 1309.18 applies where a creditor has actual possession of security collateral, and requires the creditor to avoid depreciation due to waste, etc. Where the creditor simply has the right to acquire possession, we do not believe that R.C. 1309.18 requires the creditor to do so in violation of better business practices. Here, First National determined that in order to obtain possession, it would have to pay Truck Center on its artisan's lien. Since the artisan's lien was worth more than the truck itself, First National was correct in concluding that nothing would be gained either for itself or for Greenstreet if it took possession of the truck.

Greenstreet argues again as to value that the evidence established that the truck was worth more than Truck Center's claim against it. We have, however, already concluded that the referee's determination that it was not was supported by the evidence.

Greenstreet's first assignment of error is accordingly held not to be well-taken. * * *[1]

The judgment of the Court of Common Pleas of Montgomery County will be affirmed.

*Judgment affirmed.*

BROGAN, P.J., and KERNS, J., concur.

ZIEGEL, J., retired, of the Court of Common Pleas of Preble County, sitting by assignment in the Second Appellate District.

---

[1] Reporter's Note: The text of the opinion as it appears herein was abridged by Judge Ziegel.