OPINION
Defendant-appellant Thomas Pollock appeals the decision of the Carroll County Common Pleas Court which ordered him to pay $50,000 plus 10% interest in compensatory damages to plaintiff-appellee New Rocky Valley Farms, Inc., after a finding that the elements of civil conversion had been established by a preponderance of the evidence. For the following reasons, the trial court's judgment is affirmed.
On April 21, 1994, Peter and Dorothy Puskarich, as agents for New Rocky Valley, executed a twenty year lease ("Lease") giving "Nick Puskarich ("lessee") the exclusive right to mine upon 1,928 acres of New Rocky Valley's land. The Lease covered all minable and merchantable coal of the Harlem and Barton Seams, limestone, clay, shale, dirt and the surface and sub-surface overlying these substances. Lessee was explicitly permitted to use strip-mining techniques. The Lease provided lessee with the exclusive right into and under the leased premises, the right to transport and carry away coal and other material, and the right to "remove and displace any and all of the earth, rock and other strata or materials in, upon or about said coal and to dump or deposit the same on or off the leased premises." New Rocky Valley expressly waived all surface damage caused by lessee's mining operation. Lessee agreed to pay royalties to New Rocky Valley on stone, shale, clay, dirt and coal removed from the leased premises.
On April 23, 1994, appellant successfully bid on four parcels of land that New Rocky Valley was selling at an auction. Appellant signed a promissory note and four purchase agreements which provided that the parcels were encumbered by the Lease. Appellant could not raise the money to pay the note before the June 7, 1994 closing date. On September 8, 1994, New Rocky Valley gave appellant a two year option to purchase the four original parcels and some additional parcels. A portion of this option was signed by lessee and provided that the Lease would be void if appellant failed to exercise the option.
In the meantime, on May 18, 1994, appellant executed a contract with Ruben Troyer for the sale of timber. The contract was signed by appellant as president of TEP Stone, Inc., and expressly and falsely represented that appellant was the true and lawful owner of the property upon which the timber stood. The timber was actually located on the land owned by New Rocky Valley that appellant failed to purchase. Per the terms of the contract, Troyer agreed to pay appellant $10,000 for the timber and $40,000 for the damages caused by clear-cutting. The manner of payment as required by the contract was $20,000 in cash and $30,000 in money orders. After paying appellant, Troyer cut and removed timber from the property between July and October 1994.
During the logging operation, New Rocky Valley noticed Troyer's logging, investigated the matter, and discovered that H appellant had given Troyer the right to log. On February 20, 1996, New Rocky Valley filed a complaint against appellant. Count three of the complaint alleged that appellant committed the tort of civil conversion by selling New Rocky Valley's timber. Appellee sought $50,000 in damages plus interest from the date of the timber contract. The other counts of the complaint dealt with the breached purchase agreements and the option contract.
A bench trial was held on January 13, 1997. Thereafter, the court granted judgment to New Rocky Valley on count three. On January 22, 1997, the trial court filed findings of fact and conclusions of law which concluded in pertinent part that "[i]n 1994 and continuing to a current date, plaintiff is the legal owner of record of certain acreage in Lee and Washington Townships, Carroll County, Ohio." The court then awarded $50,000 in damages to New Rocky Valley since that is the amount that appellant received for selling the timber. This appeal followed.
Appellant, acting pro se, sets forth two assignments of error in his brief, the first of which provides:
 "THE TRIAL COURT'S FINDINGS OF FACT SHALL BE SET ASIDE WHEN CLEARLY ERRONEOUS, WHETHER BASED ON ORAL OR DOCUMENTARY EVIDENCE."
This assignment of error is broken down into two subassignments which read:
 "Where a party does not show a title or interest in himself and that he has actual or constructive possession of the goods at the time of the alleged wrongful conversion, or that he be entitled thereto, he cannot prevail on the action of conversion."
 "The trial court erred to the prejudice of the defendant in not admitting into evidence defendant's proof that appellee did not have actual or constructive possession of surface or timber."
Since the Lease granted lessee the right to remove all materials necessary to effectuate the purpose of the Lease, appellant contends that New Rocky Valley granted lessee the right to take timber. Appellant argues that New Rocky Valley divested itself of ownership of the timber by granting lessee such broad rights and therefore only lessee had standing to bring this conversion action. Appellant alleges that lessee did not sue him because he was acting as lessee's agent when he entered into the timber contract. Appellant asserts that the court's finding that New Rocky Valley had satisfied its burden of proving all of the elements of civil conversion was erroneous.
A finding of an error of law is a legitimate ground for reversal of a civil judgment. Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80-81. Moreover, a civil judgment shall be reversed as being against the manifest weight of the evidence, if the reviewing court determines that the judgment was not supported by some competent, credible evidence going to all of the essential elements of the case. Hubbard ex rel. Creed v. Sauling
(1996), 74 Ohio St.3d 402, 406; C.E. Morris v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, syllabus.
In order to prevail on a claim of civil conversion, the plaintiff has the burden of proving by the preponderance of the evidence that the defendant wrongfully exercised dominion and control over property in exclusion of or inconsistent with the plaintiff's rights. Joyce v. General Motors Corp. (1990), 49 Ohio St.3d 93,96; Zacchini v. Scripps-Howard Broadcasting Co. (1976),47 Ohio St.2d 224, 226. The plaintiff in a conversion action must have been deprived of actual or constructive possession of personalty to which the plaintiff is entitled. See OneGreenstreet, Inc. v. First National Bank of Dayton (1984),19 Ohio App.3d 161, 163 (stating that the owner of a truck who did not have the right to possession of his truck due to an artisan's lien lacked standing to sue for loss of use after the conversion of his truck). A plaintiff with no interest in the personalty converted does not have standing to sue an alleged converter. See Zacchini, supra. Thus, in the case at bar, the action for conversion lies only with the owner of the timber. The issue then is whether New Rocky Valley, as undisputed owner of the real estate, remained the owner of the timber standing upon the land after it leased that land to lessee for strip-mining with the right to remove certain described minerals "and other material."
A lease is to be construed according to ordinary principles of contract interpretation. See Graham v. Drydock Coal Co. (1996),76 Ohio St.3d 311. If a contract is clear and unambiguous, then it's interpretation is a matter of law subject to de novo review.Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107;Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241. A mineral lease that gives the lessee the right to use the land and gives the lessor the right to collect royalties or rent is a contract for an interest in land; it is the grant of a property right. Crawford Murray v. Wick (1868), 18 Ohio St. 190,202. See, also, Cook v. Andrews (1880), 36 Ohio St. 174,179. A mineral lessee may use the land to the extent that such use has been granted to him or is necessary to obtain the minerals underlying the surface. Fowler v. Delaplain (1909), 79 Ohio St. 279.
Appellant alleges that lessee was granted the right to the timber by the broad language in the Lease because timber removal is a necessary part of strip-mining. It is true that strip-mining necessarily and unavoidably causes total disruption of the surface estate. Skivolocki v. East Ohio Gas Co. (1974), 38 Ohio St.2d 244,248-49. Since strip-mining destroys the visible land, it is totally incompatible with the enjoyment of the surface estate. Id. See, also, Graham, supra at 316. Overburden such as trees and vegetation must be removed prior to strip-mining. The Supreme Court has stated that there exists a "patent incompatibility of strip-mining with separate ownership of the surface estate," characterizing strip-mining as "surface violence" and "a battleground."Graham, supra at 317, 318. Thus, the Court implicitly recognized a strip-mining lessee's right to cut timber down. However, this does not mean that the lessee has the right to the proceeds from the timber removal or the sole right to sue a timber converter.
In Wolfe v. Licking Gravel Co. (1943) 71 Ohio App. 172, the court granted the landowner an injunction against the mineral lessee's removal of topsoil and overburden during mining operations where the lease was "for the purpose of and with the exclusive right to excavate, remove and carry away sand and gravel." Id. at 173. The court held that absent a specific agreement to the contrary, the lessee has no right to remove anything from the land but the minerals specified in the lease, including mining refuse and materials which must be moved aside in order to remove the mined product. Id.
In the case at bar, there is no specific agreement giving lessee the right to sell the timber and retain its proceeds. The absence of this language rendered the Lease irrelevant to the conversion proceedings. As such, the court aptly prohibited appellant from cross-examining Peter Puskarich about New Rocky Valley's intent in executing the Lease. Moreover, lessee may have had the right to strip-mine, but there is no guarantee that this would ever occur. In fact, it did not occur and lessee was later divested of the right to mine. Thus, the right to the trees remained with New Rocky Valley.
We hold that the trial court did not err by finding that New Rocky Valley was the owner of the realty and thus the owner of the timber located upon the realty. The grant of mineral rights to lessee did not divest New Rocky Valley of the right to any proceeds from timber cut from its land and sold. There exists competent and credible evidence to support the court's ruling. Accordingly, this assignment of error is overruled.
Appellant's second assignment of error contends:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT ORDERED HIM TO PAY DAMAGES OF $50,000 NOT BASED UPON INJURY OR PROOF OF DAMAGES."
Appellant breached the purchase agreements and disregarded a promissory note which obligated him to buy. New Rocky Valley's property. He had previously contracted for trees to be cut from property that he did not yet own or have rights in. The contract price was $50,000; this amount was divided into parts, $10,000 for the timber and $40,000 for damages from clear-cutting.
Appellant suggests that if New Rocky Valley was injured, then it would have sought civil or criminal remedies immediately after learning of the logging operation. The validity of that contention, however, is rebutted by an apparent and logical explanation. That is, it is possible that New Rocky Valley waited to bring silt against appellant because it hoped that appellant was going to complete the purchase of the land. If the purchase was completed, then the loss of timber would be irrelevant. When New Rocky Valley realized that appellant was not going to complete the purchase, it brought suit for the loss of timber. Since there is no statute of limitations violation or laches argument in the case sub judice, the argument of appellant is without merit.
Appellant also argues that the timber contract does not establish the amount of actual damages to New Rocky Valley. In response thereto, we note that there are generally three measurements of damages for destruction of trees. First, the landowner can recover the value of the trees that were removed from the land. See Wooten v. Knisley (1997), 79 Ohio St.3d 282. See, also, 4 Restatement of Law 2d, Torts (1979) 544, Section 929 (1) and (2). Second, the landowner can recover the difference in the market value of the land immediately before and immediately after the logging. Id. Third, if the trees had a specific purpose like shade or decoration, then the landowner can recover the cost of restoring the land if the cost is not grossly disproportionate to the amount of the difference in market value measurement. Id. See, also, Denoyer v. Lamb (1984), 22 Ohio App.3d 136.
In the case at bar, the third measure of damages is inapplicable because the converted trees lacked a specific purpose. Thus, New Rocky Valley could recover damages in the amount of the value of the trees or the difference in market value of their land before and after the cutting. Furthermore, since there was no evidence presented on the value of the land after removal of the trees, the second measure of damages is similarly inapplicable. Accordingly, we will focus on the first measure of damages. Strictly speaking, the value of the wood from the trees was $10,000 as established by the timber contract between appellant and Troyer. Appellant contends that this is the most that the trial court should have awarded in damages.
However, from reading the timber contract and from appellant's admission that he received $50,000 from Troyer, it is apparent that the standing timber was commercially worth more than just the $10,000 value assigned to the wood. If appellant had not directed the timber to be cut down, then New Rocky Valley could have entered a similar timber contract. The timber contract constituted prima facie evidence of the amount New Rocky Valley could realize on the sale of the timber. See Board of Park Comm.of Columbus v. DeBoit (1984), 15 Ohio St.3d 376, 377.
Moreover, we have previously held that the general rules of damages are not exact formulas to be applied in every case without regard to whether their application would compensate the injured I party fully for losses which are the proximate result of the tortfeasor's conduct. Lindsay v. Herron (Mar. 21, 1990), Mahoning App. No. 89 C.A. 75, unreported, 1, citing Thatcher v. LaneConstr. Co. (1970), 21 Ohio App.2d 41. Thus, the amount of New Rocky Valley's damages was properly assigned as $50,000. Accordingly, this assignment of error is overruled.
At the end of its brief, New Rocky Valley asks this court to award attorney fees based upon the allegedly frivolous conduct of appellant in bringing this appeal. New Rocky Valley cites R.C.2323.51 as the statute which allows us to award attorney fees. However, this statute is in the title dealing with common pleas courts, not appellate courts. This court is governed by App.R. 23 which provides:
 "If a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs."
A frivolous appeal is one that presents no reasonable question for review. See R.C. 2505.35. Because there exists a dearth of prior case law directly addressing appellant's assignments of error, this court holds that the appeal was not frivolous. Thus, we overrule New Rocky Valley's request for attorney fees.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs.
Waite, J., concurs.
APPROVED:
 ____________________________ JOSEPH J. VUKOVICH, JUDGE